RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0177p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

WARREN EDWARD ENGLISH, III,

           *Petitioner-Appellant*,

*v.*

MARY BERGHUIS, Warden,

           *Respondent-Appellee*.

> No. 16-2676

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:09-cv-01012—Janet T. Neff, District Judge.

Argued: April 25, 2018

Decided and Filed: August 21, 2018

Before: COLE, Chief Judge; GUY and DONALD, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ARGUED:** David A. Dodge, DODGE & DODGE, P.C., Grand Rapids, Michigan, for Appellant. Bruce H. Edwards, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:** David A. Dodge, DODGE & DODGE, P.C., Grand Rapids, Michigan, for Appellant. Bruce H. Edwards, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

───────────────

## OPINION

───────────────

BERNICE BOUIE DONALD, Circuit Judge. Petitioner-Appellant Warren Edward English III ("English") appeals the district court's denial of his 28 U.S.C. § 2254 habeas corpus

petition in connection with his conviction by a Michigan jury of third-degree criminal sexual conduct. Before this Court in the present appeal is a single substantive issue: whether English's Sixth Amendment right to an impartial jury was violated as a result of a juror's failure to disclose her own sexual assault on voir dire. There is also a threshold procedural issue: the proper standard of review.

## I.      Background of the Case

In 2006, English was convicted by a jury in Michigan's 45th Circuit of third-degree criminal sexual conduct, in violation of Mich. Comp. Laws § 750.520d(1)(c) (penile-vaginal penetration–victim physically helpless). The charged conduct was sexual intercourse with a seventeen-year-old acquaintance while she was asleep at English's home during a party. The trial court sentenced English to 21-180 months' imprisonment. English has since been released from prison.

At voir dire, the trial court had stated to the jury venire that an accused "has the right to a trial . . . by a jury of [twelve] impartial persons . . . " who "must be free as humanly possible, from bias, prejudice, or sympathy for either side." The court further announced that voir dire questions aimed "to find out if [each prospective juror] ha[d] any opinions or personal experiences that might influence [her] for or against the prosecution, the defendant, or any witnesses. One or more of these things could cause you to be excused."

Subsequent to the trial, at an evidentiary hearing held on September 29, 2006, "Juror A," a member of the jury that convicted English, revealed that her father had sexually abused her at age eight. Juror A stated that she heard and understood the judge's instruction to pay attention to questions and answers to other jurors during voir dire, and that she did pay attention, but she only "vaguely" recalled certain jurors' testimony that they had suffered sexual abuse; those jurors' going into conference with the court outside the presence of the other jurors; and those jurors' subsequently being excused for cause. Asked whether she recalled that one or more jurors who indicated that they or a family member had suffered sexual assault had been "excuse[d] for cause," she said she "d[id]n't remember that happening." Juror A testified that the abuse had occurred "years ago," that she and her father had long since reconciled, and that

"[w]hat had happened to me years ago happened to me years ago and I don't have a problem with it."

Juror A denied that she had attempted "to hide anything from the Court." When asked the reason for the nondisclosure, she said she must have "thought that there would have to be a conviction or that I would have had to went to the police" to report the abuse, in order for her to have been a victim in a criminal sense. However, Juror A stated that, when interviewed by the private investigator, she mistakenly thought she *had* revealed the abuse to the court. She also testified that she had "reconciled [with her abuser] many, many, many years ago," and that "[w]hat had happened to me years ago happened to me years ago and I don't have a problem with it."

English moved for a new trial based on juror misconduct; the motion was heard in a videotaped hearing on December 8, 2006 before Michigan Circuit Court for the 45th District. The court granted the motion, citing *People v. Manser*, 645 N.W.2d 65 (Mich. 2002) (overruled in part, *People v. Miller*, 759 N.W.2d 850, 863 & n.26 (Mich. 2008)). Emphasizing that there was "a material omission on the part of Juror A," the court found that this omission compromised not only English's but "both sides' right to a fair and impartial jur[y]." The court found it irrelevant "that Juror A [wa]s convinced that she was fair and impartial," because she "had the duty to disclose" the past sexual abuse. In the court's estimation, had Juror A made the revelation, as was her duty, the trial court would have excused Juror A for cause, or defense counsel would have exercised one of its remaining peremptory challenges to have her excused.

The prosecution appealed to the Michigan Court of Appeals, which reversed in a 2-1 decision on December 4, 2007 and reinstated English's conviction. *People v. English*, No. 269887, 2007 WL 4245412 (Mich. App. Dec. 4, 2007). The majority based its decision not on the alleged constitutional deprivation of the right to an impartial jury, but rather on the trial court's "belief that a victim of sexual abuse should automatically be excused from sitting on a sexual conduct jury," which the majority found "erroneous." *Id.* at *1. The majority distinguished *Manser* because "the experiences of the juror were similar in nature to the charges" against the defendant there, whereas the experience Juror A failed to disclose here was, in the majority's view, "very much different" than the allegations against English: "The juror in this

case has [subsequently] disclosed that a family member molested her at age eight[,] whereas defendant raped a seventeen-year-old acquaintance while she slept." *Id.* at *2.

The dissent[1] agreed with the majority that "a victim of sexual assault is not automatically excusable for cause," but felt the proper "remedy for the trial court's erroneous analysis" was not reinstatement of the verdict, but rather "remand for reconsideration under the proper legal standard." *Id.* at *5 (White, J., concurring in part and dissenting in part).  The dissent explained:

> While the trial court erred in finding that the juror was excusable for cause simply because the juror had been sexually abused, it does not follow that the juror was not, in fact, excusable for cause.  A trial court is not obliged to accept a juror's declaration that the juror is not biased if there is reason to doubt the assertion.  Rather, a trial court must make its own determination, taking into account all the circumstances, including the juror's statements and demeanor, whether the juror can be fair and impartial.  Here, the trial court should make a determination on remand, considering the circumstances of the voir dire, the later disclosure, the credibility of the juror's explanation and declaration of impartiality, and any other relevant factors.

*Id.*

English subsequently sought review from the Michigan Supreme Court, which denied English's application for leave to appeal using routine language on February 6, 2008.  *People v. English*, 743 N.W.2d 909, 910 (2008).  Two justices dissented, agreeing with the dissent below that the case should have been "remand[ed] . . . to the trial court for reconsideration under the appropriate standard, as explained in the partially dissenting opinion in the Court of Appeals, of whether the juror was excusable for cause." *Id.* (Cavanagh and Kelly, JJ., dissenting).

English then filed a habeas petition, which the district court dismissed without prejudice for failure to exhaust state-court remedies.  *English v. Berghuis*, No. 1:08-CV-856, 2008 WL 4534426, at *1 (W.D. Mich. Sept. 30, 2008).

---

[1]The dissenting judge, Judge White, is now a member of this Court.  She has recused herself from consideration of this case.

In December 2008, English filed a motion for relief from judgment in state court, which the trial court denied. The court opined that the juror may have had at least "subconscious[]" bias but held that the court was bound by the Court of Appeals decision and lacked the authority to revisit the issue. The Michigan Court of Appeals and the Michigan Supreme Court denied discretionary review, using routine language.

On November 4, 2009, English filed a new § 2254 habeas petition in district court, which was dismissed on December 21, 2009 pursuant to Rule 4.[2] The district court also denied English a certificate of appealability ("COA"). English appealed and was granted a COA by this Court, solely as to the juror impartiality issue. On July 10, 2013, this Court reversed and remanded for further proceedings. *English v. Berghuis*, 529 F. App'x 734 (6th Cir. 2013). We concluded that the district court's deference to the state courts was an improper basis to deny English's habeas petition, because the district court failed to make the requisite determination that English's federal claim had been adjudicated on the merits. *Id.* at 745. The Court further concluded that, "given the complex procedural, evidentiary, and constitutional questions raised by [English's] petition, it was an inappropriate candidate for summary dismissal under Rule 4." *Id.*

We remanded to the district court for "determination of the adjudication question, applying the *Richter/Williams* rebuttable presumption," with "full briefing by the parties and a review of the complete state court record." *Id.* The Court further directed that should the district court find "the presumption of adjudication . . . rebutted, it must conduct *de novo* consideration of the merits of English's Sixth Amendment claim regarding the misconduct of Juror A." *Id.* If, in contrast, the district court found the presumption not rebutted and deference under the Antiterrorism and Effective Death Penalty Act ("AEDPA") applicable, "the court must still evaluate English's Sixth Amendment claim through the AEDPA lens, applying the *McDonough* [*Power Equipment, Inc. v. Greenwood*, 464 U.S. 548 (1984)][3] test to determine whether English was denied his Sixth Amendment right to be tried by a fair and impartial jury, as that right is

---

[2]Rule 4 states, in relevant part: "If it *plainly appears* from the motion, any attached exhibits, and the record of prior proceedings *that the moving party is not entitled to relief*, the judge must dismiss the motion and direct the clerk to notify the moving party." *Rules Governing Section 2254 Cases in the United States District Courts*, Rule 4(b) (emphases added).

[3]*See infra* section III.B.

elucidated by Supreme Court precedent." *Id.* (alteration added).  The dissent found that English had not "me[]t his burden of establishing the basis for a new trial" and therefore disagreed that remand was necessary.  *Id.* (Suhrheinrich, J., dissenting).

On remand, after briefing, the magistrate judge issued a report and recommendation ("R&R") recommending dismissing English's petition as without merit under either AEDPA deference or *de novo* review.  Regarding the deferential AEDPA analysis, the magistrate judge incorporated the district court's reasoning from its denial of English's original habeas petition.  Under *de novo* analysis, the magistrate judge concluded that English failed to establish either that Juror A deliberately concealed her having been a victim of sexual assault, or that she had actual bias.  Over English's objections, the district court adopted the magistrate judge's R&R, holding that English had not shown that Juror A deliberately concealed her history, or demonstrated actual bias; the district court also declined to issue English a COA.

English subsequently sought a COA from this Court, which granted it on October 12, 2017.  This Court found that "[r]easonable jurists could—and indeed have—disagreed on whether English was denied his right to a fair trial" because of Juror A's nondisclosure.  *English v. Berghuis*, No. 16-2676 (6th Cir. Oct. 12, 2017) (order) at 3.  Therefore, the Court concluded, English made "a substantial showing of the denial of a constitutional right." *Id.* (quoting 28 U.S.C. § 2253(c)(2) and citing *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)).  The COA was granted on the issue of whether English's Sixth Amendment fair trial right was violated as a result of Juror A's nondisclosure.  *Id.*

## II.     Standard of Review

Under the AEDPA's amendment of the § 2254 habeas standard, a petitioner carries a heavy burden:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  It is not enough that a reviewing court conclude that the state court "incorrectly" applied clearly established federal law; rather, the state court must have done so *unreasonably*.  *Williams v. Taylor*, 529 U.S. 362, 409-12 (2000); *see also Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (quoting *Harris v. Haeberlin*, 526 F.3d 903, 909 (6th Cir. 2008)) ("[T]he central inquiry is whether the state court decision was objectively unreasonable.").  Whether AEDPA deference actually applies, though, is at issue.

## III.    Analysis

### A.    Issue of Applicable Standard of Review

On § 2254 review of a state court decision, the reviewing court faces a crucial threshold question:  whether the state court actually adjudicated the defendant's claim on the merits.  If the court determines that the state court did so, AEDPA deference applies, as noted above.  *See* 28 U.S.C. § 2254(d); *Brown v. Smith*, 551 F.3d 424, 428 (6th Cir. 2008).  If, however, the state court did not so adjudicate the claim, the claim is reviewed *de novo* for questions of law, and for clear error as to questions of fact.  *Robinson v. Howes*, 663 F.3d 819, 823 (6th Cir. 2011).

The government contends that, in finding that English "ma[de] no showing that he was prejudiced by" Juror A's presence on the jury, "nor did the trial court make any such finding of prejudice," *English*, 2007 WL 4245412, at *3, the state appellate court "adjudicated the claim on the merits." (Appellee's Br. at 18, 22-28).  English argues for *de novo* review because "the Michigan Court of Appeals based its decision on independent grounds" from the merits of English's claim, thus rebutting the presumption of adjudication.  (Appellant's Br. at 24, 42-43).

A reviewing court must apply a "strong but rebuttable" presumption that a federal claim was adjudicated on the merits by the state court—often referred to as "the *Richter/Williams* rebuttable presumption," after the two cases announcing it:  *Harrington v. Richter*, 562 U.S. 86 (2011), and *Johnson v. Williams*, 568 U.S. 289 (2013).  *Richter* held that "[w]hen a federal claim

has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits [absent] any indication or state-law procedural principles to the contrary." 562 U.S. at 99 (alterations added). *Williams* expressed this presumption more strongly: "When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court *must presume* that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted." 568 U.S. at 300-01 (emphasis added).

One circumstance permitting rebuttal of the presumption is where "the state standard is less protective" than the federal standard, or the state court "simply mentioned in passing or . . . buried in a string cite" the federal constitutional provision or precedent. *Williams*, 568 U.S. at 301. The Supreme Court has also instructed more broadly that "[t]he presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." *Richter*, 562 U.S. at 99-100 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)).

Importantly, for AEDPA deference to apply, the state-court adjudication must have been "on the merits." 28 U.S.C. § 2254(d). The Supreme Court has explained that "[a] judgment is normally said to have been rendered 'on the merits' only if it was 'delivered after the court . . . heard and evaluated the evidence and the parties' substantive arguments.'" *Williams*, 568 U.S. at 302 (quoting Black's Law Dictionary 1199 (9th ed. 2009)). *Williams* further clarified that "merits" means the "intrinsic rights and wrongs of a case"—as to substance, not form. *Id.* at 302-03 (quotation omitted).

The Michigan Court of Appeals decision gives strong grounds for overcoming the presumption of adjudication. The opinion fails to reach the merits of English's claim, instead holding that the trial court erred in applying a presumption of automatic excusal of prospective jurors who had been victims of sexual assault from sexual-offense trials. *English*, 2007 WL 4245412, at *1. As this Court expressed it, "the decision was a judgment on the trial court's misunderstanding of the law." *English*, 529 F. App'x at 743. In concluding that the presumption of adjudication was overcome by the state appellate court's decision, this Court observed that:

> [b]y simply negating the trial court's ruling, without making its own finding as to whether Juror A was biased or otherwise excusable for cause, and without remanding for further proceedings under the proper legal standard, the [state] court of appeals appears to have left English's Sixth Amendment and state law claims unresolved as to their merits.

*Id.* (alterations added). As English observes, this Court's finding that the state appellate court left English's Sixth Amendment claim unresolved on the merits is the law of the case here. (Reply Br. at 8, 10 (citing, *inter alia*, *United States v. Moored*, 38 F.3d 1419, 1421 (6th Cir. 1994) (findings made at one point in the litigation become law of the case for subsequent stages)).

The conclusion that there was no adjudication on the merits certainly underlay the dissent on the Michigan Court of Appeals, with which two justices concurred in their own dissent on review by the Michigan Supreme Court: "While the trial court erred in finding that the juror was excusable for cause simply because the juror had been sexually abused, it does not follow that the juror was not, in fact, excusable for cause." *English*, 2007 WL 4245412, at *5 (White, J., dissenting); *see also English*, 743 N.W.2d at 910 (Cavanagh and Kelly, JJ., dissenting).

The government understandably points to the state appellate court's finding that English "ma[de] no showing that he was prejudiced by" Juror A's presence on the jury as reinforcing the presumption of adjudication. (Appellee's Br. at 18 (quoting *English*, 2007 WL 4245412, at *3)). "This language," the government urges, "constituted a merits adjudication of English's Sixth Amendment claim because it utilized the controlling test." (*Id.* at 24).

However, the source of the appellate court's use of the word "prejudice" is not the federal standard, but rather the Michigan standard from *People v. Daoust*: "[W]hen information potentially affecting a juror's ability to act impartially is discovered after the jury is sworn, the defendant is entitled to relief only if he can establish (1) that he was *actually prejudiced* by the presence of the juror in question or (2) that the juror was properly excusable for cause." 577 N.W.2d 179, 184 (Mich. Ct. App. 1998).[4] Arguably, the court cannot even be said to have

---

[4]As this Court noted, however, "[b]oth *Daoust* and *Manser*, the case relied upon by English in his motion for a new trial, have since been overruled by *People v. Miller*, 759 N.W.2d 850, 863 (Mich. 2008) (holding that a

adjudicated English's *state-law* claim on the merits, because prejudice is merely one of two, disjunctive, prongs. *See id.*

Even less tenably can it be argued that the court adjudicated English's federal claim. *Daoust* sets petitioners a higher bar and is thus "less protective," *see Williams*, 568 U.S. at 301, than the federal standard, which only requires a showing that the juror "failed to answer honestly a material question on *voir dire*" and "that a correct response would have provided a valid basis for" a for-cause challenge, *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984).

Because the state appellate court's use of the *Daoust* language implicitly invoked a "state standard . . . less protective" than the federal standard, one of the circumstances rebutting the presumption of adjudication is met. *See Williams*, 568 U.S. at 301. This circumstance, along with the appellate court's disposition of the State's appeal on grounds independent from English's substantive claim, supports the conclusion that the *Richter/Williams* strong presumption is overcome here.

## B.     Sixth Amendment Right to an Impartial Jury

The fair trial right secured by the Sixth Amendment guarantees, in pertinent part, that an accused is entitled to "trial[] by an impartial jury." U.S. Const. amend. VI. The Supreme Court has held the right to jury trial in criminal cases "fundamental to our system of justice." *Duncan v. Louisiana*, 391 U.S. 145, 153-54 (1968). The right to a jury trial presupposes "an absolute right to a fair and impartial jury." *People v. Tyburski*, 518 N.W.2d 441, 447 (Mich. 1994) (citing *Duncan*, 391 U.S. 145).

The legal framework for a claim of juror bias such as the one asserted here comes from *McDonough*, 464 U.S. 548. Under *McDonough*, for a prospective juror's nondisclosure to warrant a new trial, a defendant must show that (1) the juror "failed to answer honestly a material question on *voir dire*," and (2) "a correct response would have provided a valid basis for a challenge for cause." *Id.* at 556. That is, the nondisclosure must have denied the defendant his

---

new trial is not always required whenever a juror would have been excusable for cause, since the proper inquiry is whether the defendant was denied his right to an impartial jury)." *English*, 529 F. App'x at 741 n.4.

Sixth Amendment right to an impartial jury. *See id.* The district court found, and the parties do not dispute, that English satisfied the first *McDonough* prong by showing that Juror A omitted material information on voir dire. That leaves, as the substantive heart of this appeal, the second prong: whether "a correct response would have provided a valid basis" for a for-cause challenge. *See id.* That inquiry asks whether the defendant would have had a "basis for arguing that [the] court is required to sustain" the challenge. *See United States v. Shaoul*, 41 F.3d 811, 816 (2d Cir. 1994).

The intentional or unintentional nature of a juror's omission has a crucial implication: where the omission was unintentional, the petitioner must show "actual bias," but where the omission was intentional, bias may be inferred. *Zerka v. Green*, 49 F.3d 1181, 1186 (6th Cir. 1995) (quoting *United States v. Patrick*, 965 F.2d 1390, 1399 (6th Cir. 1992)). In its analysis of the implied bias issue here, the district court found that "there [was] no evidence to support the contention that [Juror A] deliberately withheld" the abuse, thus undercutting any argument of inferred bias.

However, that conclusion overlooks evidence from the following components of the record: (1) questions, answers, and excusals for cause on voir dire, which Juror A testified that she heard and observed, and (2) Juror A's testimony at the evidentiary hearing. The magistrate judge noted that "the judge did not initially ask whether any of the potential jurors had been a victim of a crime or sexually assaulted." In fact, a number of other pertinent statements and questions were articulated to the venire.

First, the trial court's statements to the venire at the outset of voir dire included not only at least one question about being a "victim or accused of a crime," but another underscoring the type of case involved—criminal sexual conduct. In addition, the prosecutor asked, "Knowing that this case deals with [criminal sexual conduct] charges, I know that the judge has brought it up, but is there anyone just because of the type of case it is, is going to have trouble sitting on this case?". The court also asked broadly about experiences that might affect impartiality:

> [W]e need to find out if you have any opinions or *personal experiences* that *might* influence you for or against the prosecution, the defendant, or any witnesses. One or more of these things could cause you to be excused, in this particular case,

even though you may otherwise be qualified as a juror. The questions may probe deeply into your attitudes, beliefs, and *experiences*. They are not meant to be an unreasonable prying into your private life. *The law requires that we get this information* so that an impartial jury can be chosen.

(*Id.*, PgID#612) (emphases added). If a juror preferred to raise a matter privately, she need only advise the court, and a private conference would be held in chambers.

Critically, in the presence of the jury pool, one prospective juror informed the trial court that she and her sister had been molested by her stepfather. A separate conference ensued, and then, back before the jury pool, the court stated: "[W]e have excused [the juror] for cause,"[5] When asked by the trial court at the evidentiary hearing whether she recalled the juror stating that she had been molested by her stepfather, Juror A answered, "[v]aguely." She again answered, "[v]aguely," regarding whether she recalled the judge stating that there would be a private conference in chambers, and whether she recalled the judge returning to the courtroom and announcing that the juror had been excused for cause. (*Id.*). The court then restated the question, to which Juror A again responded with the word "vaguely" but expanded somewhat:

> Q: [O]ne of the perspective [sic] jurors indicated that . . . she and her sister were molested by the stepfather. Then after this outside conference, the judge came back and announced that [the juror] had been excused for cause. Do you recall something like that?
>
> A: I really—it's been a while. Vaguely. I mean, I can't remember. A lot of people—a few people went in, I know that.

Juror A also testified, both at voir dire, and in the evidentiary hearing, that she paid attention throughout the voir dire proceedings and listened to all questions and answers.

In addition, the record includes troubling testimony by Juror A at the evidentiary hearing, where she admitted that she failed to "disclose . . . the history of sexual assault to the Court or to either of the lawyers at any time during the jury selection." In her testimony, Juror A made

---

[5]At least two other jurors were excused for cause relating to sexual assault. Four minutes after excusal of the juror who was molested by her stepfather, another juror stated in open court that her son had been accused of molesting a child. After a private conference, the venire was informed that that juror, too had been excused for cause. Four minutes after that excusal, another juror went into private conference, and was excused for cause, (*id.*, PgID#652). This juror had been molested by a cousin, though this was not mentioned in open court. Juror A was questioned by the court one hour and fifteen minutes after the excusal of the juror who was molested by her stepfather.

three, at least partly contradictory, assertions regarding her nondisclosure.  First, Juror A stated that when she spoke with defense counsel's private investigator after the trial,[6] she thought she had disclosed the assault.  She repeated at various points that "in [her] own mind, [she] thought that [she] had" disclosed.  Indeed, she stated, in answer to the court's question regarding having thought that she had informed the court, "Yes, I did.  Yes, I did, at the point that when I talked to [the private investigator] and even until now I'm not 100—."

Second, in answer to the court's question whether she "had thought about in [her] mind why [she] may not have provided this information to the Court," Juror A testified:  "I believe that—I thought that there would have to be a conviction or that I would have had to went [sic] to the police or to [sic] authorities to report this."  She also stated, earlier, that "[n]o one was prosecuted.  I didn't talk to the police.  I didn't talk to anybody."

Third, Juror A testified that she and her father "reconciled about this many, many, many years ago and I'm fine with this fact," and that "[w]hat had happened to me years ago happened to me years ago and I don't have a problem with it," presumably demonstrating her lack of bias regarding the subject matter of the trial.

The first and second statements, in particular, seem difficult to reconcile:  it is unclear how a person can both be under the misapprehension that she *has disclosed* information in answer to a question, and also believe that that information was *not germane* to the question and therefore that she was *not required* to disclose it.  Indeed, the statement, "I thought there would have to be a conviction . . . ," in purporting to give an account of the thought process leading to her nondisclosure, only makes sense as an explanation for *not* having disclosed the information.  To complicate matters even more, the trial court asked Juror A, "So it's not that you didn't understand that that was an issue[;] you thought you had addressed that issue and raised it with everybody . . . and let them know about it?".  Juror A replied:  "Yes."  Thus, Juror A appeared to back away from her assertion, made at two separate points at the evidentiary hearing just

---

[6]For reference, *voir dire* for the trial was held on January 9, 2006; the interview with the private investigator was just under four months after *voir dire*, on May 2, 2006; and the evidentiary hearing was approximately nine months after *voir dire*, on September 29, 2006.

moments before, that she believed that in the absence of her having gone to the police, a prosecution, or a conviction, she was under no duty to disclose her past sexual abuse.

As to the third statement—of having "reconciled" with the abuser, and no longer "hav[ing] a problem with" the incident—the Supreme Court instructs us that where a juror's impartiality "is placed in issue," and the juror swore that she could set aside her opinions and decide the case impartially, the question remains nonetheless whether "the juror's protestation of impartiality [should] have been believed.'" *Patton*, 467 U.S. at 1036. This Court has underscored that "[a] finding of 'sincerity' is not the same as a finding that the juror was unbiased. A juror may not conceal material facts disqualifying h[er] simply because [s]he sincerely believes [s]he can be fair in spite of them." *Zerka*, 49 F.3d at 1185 (quoting *United States v. Scott*, 854 F.2d 697, 699 (5th Cir. 1998)).

While recognizing that "[Juror A] admittedly did not reveal her status as a sexual assault victim," an omission that "constituted a failure to honestly answer a material question during voir dire," the magistrate judge found it "not clear from the record that [Juror A] could fairly or reasonably have been expected to understand that her status as a victim was a matter which she was required to reveal." In support of this conclusion, the magistrate judge noted that "the trial judge only once"—and when jury selection was "well underway"—"asked a potential juror if he had been the victim of a crime." The magistrate judge also observed that "neither the judge nor the attorneys ever asked any potential juror whether she had been the victim of a sexual assault." However, the trial court explicitly informed the jury venire of the court's "need to find out if you have any . . . personal experiences that might influence you for or against" a party or witness, and that some questions might "probe deeply into your attitudes, beliefs, and experiences." The court's broad phrasing of these instructions undercuts the magistrate judge's inference by casting a net wider than merely having been a witness or crime victim. Moreover, the excusal of a juror who had been molested by her stepfather—with no mention of prosecution or conviction—would have strongly suggested to Juror A that her sexual assault *was* relevant to the voir dire proceedings.

Two possible difficulties suggest themselves in connection with a court's finding of inferred or implied bias on the part of a juror. First, this Court has in the past noted that "the

continued vitality" of the doctrine has been "called into question" by the Supreme Court. *Johnson v. Luoma*, 425 F.3d 318, 326 (6th Cir. 2005) ("[T]he . . . doctrine may not even be viable after *Smith* [*v. Phillips*, 455 U.S. 209 (1982)]."). *Johnson* cites *United States v. Herndon*, No. 99-5642, 2000 WL 1290378 (6th Cir. Sept. 6, 2000). *Herndon*, though, notes that *Smith* is not decisive "one way or the other" on whether juror bias may still be implied. *Herndon*, 2000 WL 1290378, at *4.

Second, the doctrine of presumed or implied bias may only be applied (if at all) "in 'extreme' or 'exceptional' circumstances." *Johnson*, 425 F.3d at 326 (quoting *United States v. Frost*, 125 F.3d 346, 379 (6th Cir. 1997)). In her concurrence in *Smith*, on which *Johnson* relied, Justice O'Connor stated:

> There are some extreme situations that would justify a finding of implied bias. Some examples might include a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction. Whether or not the state proceedings result in a finding of "no bias," the Sixth Amendment right to an impartial jury should not allow a verdict to stand under such circumstances.

*Smith*, 455 U.S. at 222 (O'Connor, J., concurring). It may be suggested that none of the examples from the *Smith* concurrence would apply here. However, not only is the list of "extreme situations" provided by Justice O'Connor not exclusive, but it is prefaced with the hedging language, "[s]ome examples might include . . . ," suggesting that it is illustrative more than limiting. *See id*. Moreover, this Court in *Zerka* observed that the requirement of "extreme circumstances" to justify a new trial applied "[*i*]*n the absence of intentional concealment*." *Zerka*, 49 F.3d at 1186 n.7 (emphasis added).

Respondent contends that, "[w]hile English argues that it is likely that Juror A made a conscious decision to conceal her prior history of abuse . . . , the trial court credited Juror A's testimony that she did not intentionally withheld [*sic*] her prior assault." (Appellee's Br. at 18-19). The trial court did state, though, that "[J]uror A did not disclose . . . even though she was asked about being a victim . . . [of] sexual assault." The court further implied that Juror A did not "act[] pursuant to [her] oath . . . [to] 'answer truthfully, fully and honestly'" all questions.

While it is true that the trial court stated that Juror A "thought she had disclosed it,"[7] the court *did not* find Juror A's protestations of lack of bias credible. The court merely acknowledged Juror A's "statement that her prior undisclosed experience of being a victim of sexual assault did not bias her . . . in this sexual assault case," but nonetheless found that "it may subconsciously" do so.

Given the broadly phrased questions and statements by the court and prosecutor as to the scope of the voir dire inquiry, and the excusal for cause of a juror[8] who, in open court, referred to an experience broadly similar to Juror A's (sexual abuse at the hands of a paternal figure), and contrary to the district court's finding, the record does contain evidence that, in omitting material information on voir dire, Juror A did so deliberately. As this Court observed in prior proceedings in this litigation, "[d]ue to the material concealment [by Juror A], a finding of bias could have been readily inferred under *McDonough*." *English v. Berghuis*, 529 F. App'x 734, 740-41 (6th Cir. 2013) (citing *Zerka*, 49 F.3d at 1186).

This Court has explained that, "[a]s a general rule, a defendant may excuse a juror for cause if 'the juror's views would prevent or substantially impair the performance of h[er] duties as a juror in accordance with h[er] instructions and h[er] oath.'" *Williams v. Bagley*, 380 F.3d 932, 953 (6th Cir. 2004) (quoting *Wainwright v. Witt*, 469 U.S. 412, 424 (1985)). The Michigan Court Rules also set forth twelve grounds for for-cause challenges, including that a prospective juror "is biased for or against a party or attorney," M.C.R. 2.511(D)(2), "shows a state of mind that will prevent the person from rendering a just verdict," *id.*, 2.511(D)(3), or "has opinions . . . that would improperly influence the person's verdict," *id.*, 2.511(D)(4).[9] The circumstances outlined above suggest that the omitted information "would have provided a

---

[7]However, the trial court subsequently stated, in its order denying relief from judgment in view of the contrary decisions by the state appellate and high courts, merely that "Juror A testified that she thought she had told of the occurrence because she knew it was important."

[8]The excusal for cause of that juror, who had been molested by a stepfather, occurred one hour and fifteen minutes before the questioning of Juror A. *See supra* note 5 and accompanying text.

[9]M.C.R. 6.412 provides that the grounds for challenge to a juror in a criminal proceeding are those "set forth in M.C.R. 2.511(D) or for any other reason recognized by law." M.C.R. 6.412(D)(1). "If, after the examination of any juror, the court finds that a ground for challenging a juror for cause is present, the court on its own initiative should, or on motion of either party must, excuse the juror from the panel." *Id.*, 6.412(D)(2).

valid basis for a challenge for cause," meeting *McDonough*'s second prong. *See* 464 U.S. at 556.

Juror A's failure to disclose; the evidence that Juror A would have known that her past abuse was relevant at voir dire; and what appear to be striking inconsistencies in her account at the evidentiary hearing with respect to the non-disclosure, all point to deliberate concealment, permitting an inference of bias. *See Zerka*, 49 F.3d at 1186; *see also English*, 529 F. App'x at 740-41. Under *de novo* review, English has met the *McDonough* test, showing not only that there was a material omission by Juror A—which the parties do not dispute—but also "that a correct response would have provided a valid basis for" a for-cause challenge. *See McDonough*, 464 U.S. at 556.

## IV.    Conclusion

For the foregoing reasons, we **REVERSE** the judgment of the district court and **REMAND** to the district court with instructions to remand the case to the state court for further proceedings not inconsistent with this opinion.