NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0418n.06

Case No. 18-3806

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Aug 12, 2019
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| TARAN HELMS, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| SEAN BOWERMAN, Warden, | ) | OHIO |
| | ) | |
| Respondent-Appellee. | ) | **OPINION** |
| | ) | |

BEFORE: ROGERS, GRIFFIN, and NALBANDIAN, Circuit Judges.

NALBANDIAN, Circuit Judge. Following two rounds of direct appeals and remand, an Ohio appellate court held that Taran Helms's jury convictions for felonious assault and attempted murder, stemming from his shooting a fast-food manager who was driving the day's deposits to the bank, did not merge for sentencing purposes. In a motion for reconsideration under Ohio R. App. P. 26(A), Helms argued that the government violated his due-process right to a fair trial by changing its factual theory on appeal.

Specifically, he contended that at trial the prosecution argued that both Helms's assault and attempted-murder charges were established by Helms's shooting the victim, which merged the two offenses (an argument that initially proved successful on appeal). But later on appeal, in light of a change in the law of merger and following a remand of his case from the Ohio Supreme Court back to the court of appeals, the government changed its tune. The government instead contended

that the convictions did not merge because Helms's assault charge was supported by verbal threats, not the shooting, and therefore the convictions did not merge. That argument proved successful and Helms petitioned for habeas relief under 28 U.S.C. § 2254. The district court held that the state-court decision did not unreasonably apply Supreme Court precedent and denied his petition for relief but granted a certificate of appealability on "the question of whether the prosecution's post-conviction embrace of a theory that is inconsistent with the theory pursued during trial and through sentencing violates a defendant's due process rights." We affirm.

I.

Helms's petition stems from his Mahoning County, Ohio, convictions for attempted murder, felonious assault, aggravated robbery, kidnapping, and four firearm specifications relating to his intercepting, shooting, and robbing a fast-food manager who was driving the day's deposits to the bank. At trial, state prosecutors linked both the attempted-murder and felonious-assault charges to Helms's firing his weapon. Despite Helms's argument that the attempted murder and felonious assault counts should have merged, the court sentenced Helms to separate, consecutive sentences for each conviction, leading to an aggregate sentence of fifty years' imprisonment.

Helms appealed. He argued that "[t]he trial court committed reversible error when it sentenced [him] to multiple sentences for allied offenses of similar import committed with a single animus, in violation of Helm[s]'s rights under the Fifth, Sixth, and Fourteenth[] Amendments." *State v. Helms*, 2010 WL 3904121, at *4 (Ohio Ct. App. Sept. 29, 2010) ("*Helms I*"). Finding that Helms's attempted murder and felonious assault were linked by one animus, one gunshot, and one victim, the Ohio Court of Appeals held that "the trial court erroneously failed to merge Helms's convictions for attempted murder and felonious assault for sentencing purposes." *Id.* at *12. It therefore remanded the matter for resentencing.

2

The State appealed and the Ohio Supreme Court remanded, instructing the court of appeals to apply its recent decision in *State v. Johnson*, 942 N.E.2d 1061 (Ohio 2010) (analyzing when two offenses are allied offenses of similar import subject to merger). *State v. Helms*, 944 N.E.2d 233, 234 (Ohio 2011). On remand, the State presented a new argument for why the attempted murder and felonious assault convictions were not subject to merger: while the attempted murder conviction was supported by Helms's shooting the victim, the felonious assault conviction was supported by Helms's later threat that he would shoot the victim again. Thus, the State argued, the acts had separate animuses and were not allied offenses.

Applying *Johnson* to the State's new theory, the Ohio Court of Appeals reversed course and held that the offenses did not merge. In its opinion, the court of appeals also addressed and refuted the potential due-process problem allegedly caused by the prosecution's using a new theory of the case that depended on a set of facts that did "not correspond to the prosecutor's theory of the case set forth in the opening and closing arguments." *State v. Helms*, 2012 WL 966810, at *7 (Ohio Ct. App. Mar. 20, 2012) ("*Helms II*"). The dissent disagreed, arguing that "[t]he State's abandonment of its theory of the case and introduction of a distinct, unexpected and inconsistent theory violates a defendant's due process rights." *Helms II*, at *13 (DeGenaro, J., dissenting).

Helms filed a motion for reconsideration under Ohio R. App. P. 26(A).[1] He argued that the *Helms II* decision violated: "(1) the right to due process of law; (2) the right to trial by jury, (3) the right not to be put twice in jeopardy; and (4) the right to confront the witnesses against him." DE 5-1, Mot. for Recons., Page ID 383. To support his argument, Helms asserted that since the State did not argue at trial that the threat he made after shooting the victim, rather than the

---

[1] Helms appended documents from the Ohio state court record to his return of writ in the district court. Citations to this entry in the district court record will reflect the specific state court document being cited.

shooting itself, was the factual basis for the felonious assault conviction, the State's changed theory on appeal violated the Sixth Amendment.[2] He argued, therefore, based on the State's original theory, that because both convictions were supported by the shooting, the crimes were allied offenses and should have merged for sentencing.

The state appellate court denied his motion. The *Helms III* majority—authored by the same judge as the *Helms II* majority—declined to comment on the due-process issue, while a concurring judge noted that since the panel already addressed that issue in *Helms II*, it would not do so again. The dissent, however, elaborated on why the majority erred in not finding a due-process violation. It concluded that "[i]n raising this new theory well after the trial had ended," the State violated Helms's "ability to effectively defend himself," and that the "use of a novel theory on appeal offends principles of due process[.]" *State v. Helms*, 2013 WL 6670810, at \*9–10 (Ohio Ct. App. Dec. 12, 2013) ("*Helms III*") (DeGenaro, J., dissenting).

Helms petitioned the Ohio Supreme Court. He argued that "a criminal defendant's constitutional guarantees of due process, a fair trial, the right to confront witnesses against him, and protection from double jeopardy are violated when the State asserts one argument against merger of allied offenses at trial and then asserts a different, inconsistent argument against merger

---

[2] Helms's motion for reconsideration situates the alleged violation in the Sixth Amendment, rather than the Fourteenth. But the Supreme Court has noted that "[w]hether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (internal citations omitted) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)). *See also Strickland v. Washington,* 466 U.S. 668, 684–85 (1984) ("The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment[.]").

on appeal." DE 5-1, Mem. in Supp. of Appeal, Page ID 419. The Ohio Supreme Court declined to consider the case.

Under the *Helms II* order, the Court of Common Pleas held a sentencing hearing in July 2014. It merged the firearm specifications but did not merge the attempted-murder and felonious-assault convictions. The court imposed an aggregate sentence of forty-one years' imprisonment.

Helms petitioned for habeas corpus under 28 U.S.C. § 2254 in the Northern District of Ohio in May 2015. He argued that "[b]y asserting a new argument against merger on appeal that is inconsistent with arguments made against merger at trial, the prosecution deprives a criminal defendant of his or her constitutionally guaranteed rights to due process, a fair trial, confront witnesses, and be protected from double jeopardy." DE 1, Pet. for Habeas, Page ID 19 (citing *Crane v. Kentucky*, 476 U.S. 683 (1986)). The government filed a return of writ, arguing that the state court decision was not clearly contrary to or an unreasonable application of Supreme Court precedent. The government, however, did not challenge Helms's petition on any procedural grounds. Instead, it acknowledged that "in *Helms III*, the court of appeals addressed his issues presented in his . . . motion for reconsideration, and he went on to present them to the Ohio Supreme Court in discretionary review of the appellate court's decision. Thus, they are exhausted." DE 5, Return of Writ, Page ID 48 (internal record citations omitted).

In its reply to Helms's traverse, however, the government contended that Helms procedurally defaulted his claim because he raised the due-process issue for the first time in his motion for reconsideration. In his surreply, Helms argued that the government waived the procedural-default defense because it failed to raise the argument in its initial return of writ.

The magistrate judge issued a report recommending denial of Helms's petition. The magistrate judge held that the government did not waive its procedural-default defense because

5

"[t]he exact contours of Helms's sole ground for relief were not altogether clear in the cursory petition Helms filed" and "any potential prejudice stemming from [the prosecution's] belated assertion of procedural default was negated by the Court permitting Helms to file a surreply wherein Helms attempts to refute the contention that his claim is defaulted." DE 17, R. & R., Page ID 4199–200. But the judge rejected that defense because "Helms sufficiently raised his claim before both the state appellate court, which had an opportunity to consider it [on his motion for reconsideration], and also before the Supreme Court of Ohio." *Id.* at 4202. The magistrate then considered Helms's petition on the merits and recommended that the district court deny it because the state-court decision did not violate clearly established Supreme Court precedent.

The district court adopted the magistrate's report and recommendation in full. Applying the standard of review from the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the district court concluded that "Helms cannot establish he is entitled to a writ of habeas corpus because he does not identify the 'clearly established Federal law' underlying the specific question he presents." DE 22, Mem. Op., Page ID 4229. The court, however, granted Helms's request for a certificate of appealability on "whether the prosecution's post-conviction embrace of a theory that is inconsistent with the theory pursued during trial and through sentencing violates a defendant's due process rights." *Id.* at 4230. Helms timely appealed.

II.

When a district court denies a habeas petition, this court reviews its legal conclusions de novo and its factual findings for clear error. *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2005). When the district court makes no independent findings of fact, however, we review the factual findings de novo. *Id.* On the other hand, when the state court makes factual findings, we accord them a "presumption of correctness" and disturb them "only upon a petitioner's showing by clear

6

and convincing evidence that the factual findings were incorrect." *Id.* (citing *Warren v. Smith*, 161 F.3d 358, 360–61 (6th Cir. 1998)).

When the underlying state-court adjudication rests on the merits of a federal claim, the standard set forth in the AEDPA cabins our review. Under that standard, a state-court petitioner may obtain federal habeas relief if the state-court decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established" Supreme Court precedent. 28 U.S.C. § 2254(d)(1). A state-court decision is contrary to federal law when it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000) (O'Connor, J., concurring). A state court's application of federal law is unreasonable when it "identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts" of the case. *Id.* The statute's deferential standard "reflects the view that § 2254 is only to be used to guard against extreme malfunctions in the state criminal justice systems." *Gumm v. Mitchell*, 775 F.3d 345, 360 (6th Cir. 2014) (internal quotation marks omitted).

If, however, the state court did not adjudicate the federal issue on the merits, the reviewing federal court applies pre-AEDPA standards and reviews any legal issues de novo. *Id.*

III.

Helms appeals the district court's denial of his petition for habeas corpus under 28 U.S.C. § 2254. He contends that the state court unreasonably applied Supreme Court precedent when it determined that the government's altered factual theory on direct appeal did not violate his due process right to a meaningful opportunity to defend himself. In response, the government argues that Helms procedurally defaulted his due-process claim because he did not raise it until his state-

court motion for reconsideration, and in the alternative, that the state-court decision did not unreasonably apply Supreme Court precedent. Helms contends that the government waived its procedural-default defense, that our review of the state-court decision is de novo because the court did not fully adjudicate the issue on the merits, and that we should find a due-process violation on de novo review, and, alternatively, that the state-court decision unreasonably applied Supreme Court precedent.

We affirm the district court's denial of Helms's § 2254 petition. As a threshold matter, we assume, without deciding, that Helms did not procedurally default his due-process claim. In reviewing the state-court decision, we apply AEDPA deference because the state court fully adjudicated the due-process issue on the merits. Under this standard, the state court did not unreasonably apply Supreme Court precedent. We therefore affirm the denial of Helms's petition for habeas relief.

A.

In federal habeas cases, the doctrine of procedural default bars federal review when the state court has declined to address the federal claim due to the petitioner's noncompliance with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). When the procedural-default issue is "complicated" and "unnecessary to [the] disposition of the case," however, we "are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Mahdi v. Bagley*, 522 F.3d 631, 635 (6th Cir. 2008) (quoting *Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003)); *see Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [merits] question priority . . . , if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."). Thus, because the procedural-default issue here is complicated and unnecessary to the disposition

8

of this case and the merits issue is straightforward, we proceed to the merits of Helms's claim without deciding the procedural-default issue.

B.

In reviewing the state-court decision, we must first determine what standard controls our analysis. Helms argues that we should review the state-court decision de novo instead of with AEDPA deference because "the state court made only passing mention of the due process dimension of Mr. Helms's claim and did not make a ruling on the merits of the question." CA6 R. 18, Appellant Br., at 15. In response, the government contends that "a decision concluding that there are no due process concerns" in Helms's case does not equate to a decision that fails to analyze those due-process concerns. CA6 R. 21, Appellee Br., at 32. We agree with the government that the state court adjudicated Helms's due-process claim on the merits and therefore apply AEDPA deference to the state-court decision.

For AEDPA deference to apply, the state-court adjudication must have been "on the merits." 28 U.S.C. § 2254(d). A judgment is typically on the merits if it is "delivered after the court . . . heard and evaluated the evidence and the parties' substantive arguments." *Johnson v. Williams*, 568 U.S. 289, 302 (2013) (emphasis omitted). Thus, a decision that is "on the merits" is one based on "substance, not form." *English v. Berghuis*, 900 F.3d 804, 812 (6th Cir. 2018) (citing *Williams*, 568 U.S. at 302). In making this determination, the reviewing court applies a "strong but rebuttable presumption that a federal claim was adjudicated on the merits by the state court," *id.* at 811 (internal quotation marks omitted), because the statute "does not require a state court to give reasons before its decision can be deemed to have been adjudicated on the merits." *Williams*, 568 U.S. at 298 (quoting *Harrington v. Richter*, 562 U.S. 86, 100 (2011)) (internal quotation marks omitted). Thus, "[w]hen a federal claim has been presented to a state court and

9

the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 562 U.S. at 99. Even if a state court denies a motion without explicitly addressing a claim within, the on-the-merits presumption still applies. *Williams*, 568 U.S. at 301.

A petitioner may overcome the presumption by showing that "there is reason to think some other explanation for the state court's decision is more likely." *Richter*, 562 U.S. at 99–100. For example, a petitioner may overcome the presumption when the federal issue "was simply mentioned in passing in a footnote," *Williams*, 568 U.S. at 301, was "buried in a string cite," *id.*, or when the state court decided the case on separate grounds and explicitly declined to address the particular claim at issue, *Benge v. Johnson*, 474 F.3d 236, 246 (6th Cir. 2007).

Helms contends that "the *Helms II* majority simply stated the issue was allied offenses, not due process, and therefore failed to analyze the due process dimension of Mr. Helms's claim[,]" CA6 R. 18, Appellant Br., at 16, and that when he "subsequently raised the due process argument as a reason the state court of appeals should reconsider its decision[,] . . . the majority again failed to consider the due process claim." *Id.* (citing *Helms III*, at *4). He contends that this court should therefore review his due process claim de novo. *Id.*

In making this argument, Helms understates the state court's actual consideration of the due-process issue. *Helms II* and *III* (which we presume incorporated the *Helms II* rationale under the "look-through" doctrine) show that the state court fully adjudicated the federal issue on the merits. First, in *Helms II*, the majority and dissent sparred over the issue: the majority refuted the alleged "due process problem in relying on the evidence of [Helms's] threat to kill [the victim] as proof of felonious assault because that set of facts does not correspond to the prosecutor's theory of the case set forth in the opening and closing arguments." *Helms II*, at *7. In contrast, the dissent

argued that "[t]he State's abandonment of its theory of the case and introduction of a distinct, unexpected and inconsistent theory violates a defendant's due process rights." *Id.* at *13 (DeGenaro, J., dissenting).

In response to Helms's motion for reconsideration, the majority and dissent stuck to their original conclusions. While the *Helms III* majority declined to address the due-process issue explicitly, a concurring judge noted that since they had addressed the due-process issue in *Helms II*, they would not do so again. *Helms III*, at *4 (Vukovich, J., concurring). The dissent, on the other hand, found that "[i]n raising this new theory well after the trial had ended," the State violated Helms's "ability to effectively defend himself," and that the "use of a novel theory on appeal offends principles of due process[.]" *Id.* at *9–10 (DeGenaro, J., dissenting).

This back-and-forth between the majority and dissent in *Helms II* and majority, concurrence, and dissent in *Helms III* shows that the state court "heard and evaluated the evidence and the parties' substantive arguments" related to the potential due-process violation. *Williams*, 568 U.S. at 302 (emphasis omitted). The discussion between the state court judges demonstrates that the court denied Helms's due process claim based on "substance, not form." *English*, 900 F.3d at 812. Moreover, that the *Helms III* majority declined to comment on the due-process issue does not change the calculation. When the last state-court decision does not lay out all of its reasons, we "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). Here, if there is any uncertainty on why the *Helms III* majority rejected his motion for reconsideration, we "look through" the *Helm III* majority's denial and adopt the *Helms II* majority's rationale regarding due process. Given that the *Helms II* majority explicitly assessed and rejected the due process argument, Helms has not

11

presented evidence sufficient to overcome the "strong but rebuttable presumption that a federal claim was adjudicated on the merits by the state court," *English*, 900 F.3d at 811 (internal quotation marks omitted), as he has not provided "reason to think some other explanation for the state court's decision is more likely," *Richter*, 562 U.S. at 99–100. Thus, because the state-court adjudication was "on the merits," we apply AEDPA deference. 28 U.S.C. § 2254(d).

## C.

Applying AEDPA deference, Helms argues that "the state court's decision was an unreasonable application of Supreme Court jurisprudence articulating the principles tethered to the Due Process Clause." CA6 R. 18, Appellant Br., at 25. Specifically, Helms contends that the government violated his due process right to present a meaningful defense when it offered one factual theory at trial—that the attempted-murder and felonious-assault convictions were both supported by the gunshot—and a different factual theory on appeal—that the attempted-murder conviction was supported by the gunshot, but the assault conviction was supported by a verbal threat. The *Helms II* majority found that there was no due-process violation, and the *Helms III* majority—authored by the same judge—declined to comment any more on the issue in its denial of Helms's motion for reconsideration. Thus, in analyzing whether the state court unreasonably applied Supreme Court precedent in its denial of Helms's due-process claim, we "look through" *Helms III* to the "last state-related court decision that does provide a relevant rationale"—*Helms II*—and presume the later case adopted the same reasoning. *Sellers*, 138 S. Ct. at 1192.

Under AEDPA, a federal court may grant habeas relief when a state court's decision on the merits of a federal claim "involved an unreasonable application of, clearly established" Supreme Court precedent. 28 U.S.C. § 2254(d)(1). "This standard," the Supreme Court has counseled, "is 'difficult to meet.'" *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Metrish v. Lancaster*,

569 U.S. 351, 357–58 (2013)). "[C]learly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta of [the Supreme] Court's decisions." *Id.* (first alteration in original) (internal quotation marks omitted). A court's application of that law is unreasonable only if the habeas petitioner can show that it is "objectively unreasonable, not merely wrong[.]" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam). Thus, this court can only grant relief if the petitioner shows that the state court's ruling on the federal claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Our "review thus exists as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Woods*, 135 S. Ct. at 1376 (quoting *Richter*, 562 U.S. at 102–03).

Helms contends that the state court unreasonably applied Supreme Court precedent on "the principles tethered to the Due Process Clause." CA6 R. 18, Appellant Br., at 25. To support his argument, he cites the Court's acknowledgement in *Crane v. Kentucky* that "a criminal defendant is constitutionally guaranteed a meaningful opportunity to present a complete defense as a component of due process" and *Medina v. California*'s proclamation that "due process is also implicated when state action deprives a defendant of a fundamentally fair trial." *Id.* at 25–26 (citing *Medina v. California*, 505 U.S. 437, 443 (1992) and *Crane*, 476 U.S. at 690).

The government's novel post-trial argument supporting why the attempted murder and felonious assault convictions should not merge does raise questions about whether Helms had a chance to meaningfully defend himself. *See Helms II*, at * 20 (DeGenaro, J., dissenting) ("This abrupt and belated modification of the State's theory of the case, co-opted from the dissent in *Helms I*, raises serious due process concerns."). The problem for Helms, however, is that he has

identified no Supreme Court precedent that shows that the state court's decision was such an "extreme malfunction," *Woods*, 135 S. Ct. at 1378, or that there could be no "possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

Neither Supreme Court case that Helms cites is on point. In *Crane*, the Supreme Court held that the state court violated a defendant's due-process rights when it prohibited the defendant from testifying about circumstances concerning a confession. 476 U.S. at 691. In *Medina*, the Supreme Court considered whether a state can require a defendant who alleges incompetence to stand trial to bear the burden of proving so by a preponderance of the evidence. 505 U.S. at 439. Because neither case concerns whether the government can alter its factual theory on appeal without violating due process, neither supports Helms's claim that the state court unreasonably applied Supreme Court precedent. Thus, without Supreme Court precedent on point, we cannot conclude that the state court's denial of Helms's due-process claim was "objectively unreasonable." *Woods*, 135 S. Ct. at 1376. The state-court decision therefore did not unreasonably apply Supreme Court law.

\* \* \*

We affirm the district court's denial of Helms's petition for habeas corpus under § 2254.