The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
June 11, 2020

## 2020COA89

**No. 17CA0042, *People in the Interest of D.F.A.E.* — Juvenile
Court — Delinquency; Juries — Voir Dire — Juror Bias —
Challenges for Cause — Peremptory Challenges**

The juvenile defendant was adjudicated delinquent for acts
that, if committed by an adult, would constitute sexual assault and
enticement of a child.  On appeal, a division of the court of appeals
considers whether the juvenile court abused its discretion in not
excusing a juror who voluntarily disclosed relevant, personal
information after voir dire but before trial.  Applying the factors set
forth in *People v. Christopher*, 896 P.2d 876 (Colo. 1995), the
division concludes that it did not.  In doing so, the division further
concludes that under *People v. Novotny*, 2014 CO 18, and *Vigil v.
People*, 2019 CO 105, the loss of a peremptory challenge resulting

from a juror's late disclosure is not so presumptively prejudicial as to require reversal.

The division further rejects the juvenile defendant's contentions that the juvenile court reversibly erred when it admitted limited evidence of the victim's virginity and excluded evidence that the victim was allegedly seeking to lose her virginity. Finally, the division concludes any error in the admission of improper expert testimony that bolstered the victim's credibility was harmless.

Accordingly, the division affirms the adjudication.

COLORADO COURT OF APPEALS     **2020COA89**

Court of Appeals No. 17CA0042
Park County District Court No. 15JD20
Honorable Stephen A. Groome, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of D.F.A.E.,

Juvenile-Appellant.

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE DUNN
Richman and Yun, JJ., concur

Announced June 11, 2020

Philip J. Weiser, Attorney General, Grant R. Fevurly, Assistant Attorney
General, Denver, Colorado, for Petitioner-Appellee

Megan A. Ring, Colorado State Public Defender, Mark Evans, Deputy State
Public Defender, Denver, Colorado, for Juvenile-Appellant

¶ 1    D.F.A.E. (D.E.) and the victim had a sexual encounter.  He said it was consensual.  She said it wasn't.  The jury agreed with the victim on this point, and the juvenile court adjudicated D.E. delinquent for acts that, if committed by an adult, would constitute sexual assault and enticement of a child.

¶ 2    Appealing his adjudication, D.E. challenges several of the juvenile court's discretionary decisions.  Among those, he concentrates on the decision to retain a juror who, he contends, intentionally withheld material information during voir dire.  He insists that this requires reversal, in part because it cost him the ability to challenge the juror for cause or, in the alternative, exercise a peremptory challenge.

¶ 3    Because the record supports the juvenile court's findings that the juror didn't intentionally withhold information and that she could be fair and impartial, we can't conclude either that a biased juror sat on the jury or that the juvenile court abused its discretion by retaining the juror.  And in light of the shift in precedent that now no longer presumes prejudice from the loss of a peremptory challenge, we also can't agree with D.E. that the loss of such a challenge requires reversal.

1

¶ 4 As to D.E.'s remaining contentions, because they challenge rulings that were either within the juvenile court's discretion or harmless, we reject those as well. Therefore, we affirm the adjudication.

## I. Background

¶ 5 Late one night in the summer of 2015, the victim asked D.E., who went to school with the victim's sister, for a ride to a friend's house. D.E. agreed, and while en route, he allegedly threatened the victim with a pocketknife and forced her to perform oral sex. He then told her to take off her clothes, sexually assaulted her, and again forced her to perform oral sex. After this, D.E. drove the victim back to her home, where she reported the assault to friends and family. The victim's mother took her to a hospital for a sexual assault examination, and the police were contacted.

¶ 6 The prosecution charged D.E. as a delinquent with one count of sexual assault (deadly weapon), one count of sexual assault, one count of enticement of a child, one count of menacing, and two sentence enhancers.

¶ 7 At trial, D.E. defended on the theory that the entire encounter was consensual and that he never used a deadly weapon. The jury

rejected his consent defense and found him guilty of enticement and one sexual assault count. But the jury acquitted him of both counts requiring proof of a deadly weapon.

¶ 8     The juvenile court adjudicated D.E. delinquent and sentenced him to six months in jail on the sexual assault count and six years of sex offender intensive supervision probation on the enticement count.

## II.     Juror Removal

¶ 9     D.E. first argues that the juvenile court committed reversible error by not excusing a juror who, he alleges, intentionally withheld material information during voir dire. We are not persuaded.

### A.     Additional Facts

¶ 10    Before voir dire, all prospective jurors completed a written questionnaire that included these questions, among others:

> [Question 3:] Have you (or anyone you are close to) ever been the victim of a crime? What type of crime? Was the crime related to sexual assault, sexual contact, or rape? In what jurisdiction? When? Were charges ever filed?
>
> . . . .
>
> [Question 6:] Have you ever been involved in providing any type of care or services for alleged victims of sexual assault[,] sexual contact, or rape?

3

If a prospective juror answered Question 3 "yes," that juror was then asked to "describe how this has affected your feelings about sexual assault, sexual contact, or rape?" The questionnaire also provided each prospective juror the option to discuss his or her answers "in a private place, outside the presence of other potential jurors."

¶ 11     Juror N answered "no" to both questions and did not check the box to indicate that she wanted to privately discuss her answers. Neither the prosecution nor the defense questioned Juror N much during voir dire, and Juror N was ultimately selected to serve on the jury.

¶ 12     Right after the jury was sworn and the court was about to dismiss the jurors for the day, Juror N indicated she needed to speak to the court and counsel. She then stated:

> I'm sorry that I haven't said anything sooner. I just felt like I didn't really have a chance. But I did say and I did swear and I believe innocent until proven guilty. I believe in a fair justice system and I'm in this all the way, but I'm just an emotional person.
>
> About 27 years ago my daughter was date raped. She was 14 and she was seeing a boy 17, kind of without our permission. Anyway, we just (inaudible) said no. She did get

4

pregnant, we gave the child up for adoption. We all grew from this. It was actually — we all grew from it. It was a good experience because it was a family and we have a beautiful — there's a wonderful woman out there now and she's living a wonderful life. That's all I wanted to say.

It doesn't — no honestly, Judge, it does not affect me because I have also raised four boys, and one of my sons when he was in college, one of the girls wanted to accuse him of getting her pregnant and he said, "Mother, I did not." And he had to have a patern[ity] test done to prove that. It was DNA to prove he was innocent and of course he was innocent, it was not his child.

So raising four boys and having a daughter, I understand both sides. I understand how teenagers think and the way they are. So this isn't going to affect this young man at all. I look to him as innocent until I receive all the — and that's just wanted [sic] to say. I apologize for not saying anything sooner.

¶ 13    In response to a question from the court, Juror N stated, "I absolutely still believe in a fair trial for this young man." Explaining her response to Question 3 on the questionnaire, she said that "we didn't press any charges," "we didn't prosecute him," and she "didn't look at it as a crime I guess."[1] And when defense counsel

---

[1] Neither the court nor the parties asked about Question 6 on the questionnaire.

asked why she hadn't disclosed this information earlier, she responded:

> I guess because you didn't ask and you kept asking all these other people and I didn't want to raise my hand and be embarrassed and have everybody look at me like what is she going to stand up there for. So I was a little embarrassed.

Then, when responding to defense counsel's question whether she could be fair and presume D.E. innocent given her history, and whether as a parent she would want herself on the jury, she said that "[a]ny parent would be worried if that was their child," but reiterated that "it will not affect me, truthfully. Honestly."

¶ 14    After this exchange, the court said it would revisit the issue the next day but that Juror N was "still an active juror." The next morning, defense counsel asked for a mistrial or to replace Juror N with the alternate.

¶ 15    The court denied both requests, finding that Juror N was "very credible," didn't intentionally withhold information, and could "be a fair and very unbiased juror." The court also stated that because it saw no "bias" or "just cause" to dismiss Juror N, replacing her with an alternate would be "outside the scope" of the court's authority.

6

## B.    Standard of Review and Governing Law

¶ 16    Because the juvenile court is in the best position to evaluate whether a juror is unable to serve, we review for an abuse of discretion the court's decision to not excuse a juror. *People v. Christopher*, 896 P.2d 876, 879 (Colo. 1995); *People v. Drake*, 841 P.2d 364, 367 (Colo. App. 1992). We will not disturb that decision unless it was manifestly arbitrary, unreasonable, or unfair, or misapplied the law. *People v. Wadle*, 97 P.3d 932, 936 (Colo. 2004).

¶ 17    "A new trial may be required where a juror deliberately misrepresents or knowingly conceals information relevant to a challenge for cause or a [peremptory] challenge." *Christopher*, 896 P.2d at 878; *see People v. Dunoyair*, 660 P.2d 890, 895 (Colo. 1983) ("[K]nowing concealment is itself evidence that the juror was likely incapable of rendering a fair and impartial verdict in the matter."). But if a juror's failure to disclose was inadvertent, the defendant must demonstrate that the undisclosed information "was such as to create an actual bias either in favor of the prosecution or against the defendant." *Dunoyair*, 660 P.2d at 896. Absent a showing that the juror was actually biased, we must assume that she followed

7

the court's instructions and decided the case based solely on the evidence and the law. *Christopher*, 896 P.2d at 879.

¶ 18    A juror's failure to answer material questions truthfully during voir dire may justify — but does not automatically require — the removal of that juror and replacement with an alternate. *People v. Borrelli*, 624 P.2d 900, 903 (Colo. App. 1980); *see also Dunoyair*, 660 P.2d at 895. In deciding whether it should dismiss and replace a juror under these circumstances, a court should consider: (1) the juror's assurance of impartiality; (2) the nature of the information withheld during voir dire; (3) whether the nondisclosure was deliberate; (4) any prejudicial effect the nondisclosed information would have had on either party, including the defendant's right to exercise peremptory challenges; and (5) the practical remedies available when the nondisclosure is revealed. *Christopher*, 896 P.2d at 879. Ultimately, however, removal is required if the court finds actual prejudice or bias. *See People v. Clemens*, 2017 CO 89, ¶ 15.

## C.    Discussion

¶ 19    Applying the *Christopher* factors here, we conclude that the juvenile court properly exercised its discretion when it allowed Juror N to continue to serve on the jury.

### 1. Impartiality

¶ 20    First, Juror N repeatedly stated that she would be impartial, that the experiences her daughter and son went through would not affect her, and that she believed in "innocent until proven guilty." Though defense counsel questioned Juror N, none of her responses undermined her assurances that she could be fair and impartial. Nor did they suggest that she harbored any prejudice or bias against D.E. or favored the victim. When asked directly, she assured the court that she "absolutely still believe[d] in a fair trial for" D.E. The record thus supports the court's finding that Juror N could be fair and unbiased. And given that "[t]he [juvenile] court is in the best position to view the demeanor of a juror claiming impartiality," we won't disturb its impartiality determination. *Christopher*, 896 P.2d at 878.

### 2. Nature of Disclosure

¶ 21    Second, the nature of the information disclosed impacts the victim and D.E.[2] That is, while Juror N disclosed that her daughter

---

[2] As the People note, the second *People v. Christopher* factor presupposes that a juror "withheld" information during voir dire. 896 P.2d 876, 879 (Colo. 1995). Here, however, the record shows

had been date raped, she also disclosed that her son had faced a paternity accusation, but that it was false and he was "innocent." Thus, this factor doesn't clearly skew either way, and we can't on this record second-guess the juvenile court and conclude that the information showed prejudice or bias against D.E. or that Juror N favored the victim.

### 3. Intentional[3]

¶ 22    Third, when asked about her answers to the juror questionnaire, Juror N explained that because her daughter had not pressed charges, she didn't think there was a "crime" to disclose, and she "just felt like [she] didn't really have a chance" to say "anything sooner."  Juror N further explained that she did not disclose the information earlier because no one asked her any follow-up questions during voir dire and she "didn't want to raise [her] hand and be embarrassed."  Based on Juror N's explanation,

---

that Juror N was never asked a question during voir dire that would have elicited the information she later disclosed.  Thus, it cannot be said that she actually "withheld" this information during voir dire.
[3] Although *Christopher*, 896 P.2d at 879, uses the term "deliberate" and the juvenile court used the term "intentionally," the parties appear to agree they are interchangeable for purposes of this analysis.

the juvenile court found that Juror N didn't intentionally withhold the information and that she made her disclosure in an "abundance of caution just to be totally honest and straightforward[.]" Although we might have reached a different conclusion if tasked with the decision, it's not ours to make. Given that the juvenile court's factual findings have record support and are based on its credibility determination, we can't conclude the court abused its discretion. *See People v. Torres*, 224 P.3d 268, 273 (Colo. App. 2009) (deferring to trial court's finding that a juror's failure to provide responsive information on a jury questionnaire was inadvertent after hearing juror's explanation).

### 4. Prejudicial Effect

¶ 23    Fourth, D.E. argues that Juror N's late disclosure is presumptively prejudicial because it deprived him "of the ability to make a valid challenge for cause or peremptory challenge." But as to the causal challenge, the court and counsel questioned Juror N about her ability to be fair and unbiased before the presentation of evidence. The court found credible Juror N's representation that "she can be a fair and very unbiased juror in this case." And the record does not show that Juror N "evinc[ed] enmity or bias toward

the defendant or the state." § 16-10-103(1)(j), C.R.S. 2019; *see People v. Young*, 16 P.3d 821, 824 (Colo. 2001) (in reviewing denial of causal challenge, appellate courts defer to trial court's assessment of a prospective juror's credibility; and recognizing trial court's ability to evaluate a juror's demeanor and body language). Therefore, to the extent D.E. contends the late disclosure rendered Juror N actually biased, we have no basis to presume prejudice where the juvenile court found that Juror N could be fair and unbiased. *See Young*, 16 P.3d at 824. *Compare People v. Novotny*, 2014 CO 18, ¶¶ 2, 27 (requiring a defendant to show prejudice to obtain reversal based on a trial court's erroneous denial of causal challenge), *with People v. Maestas*, 2014 COA 139M, ¶¶ 19-20 (reversing where court's erroneous denial of causal challenge resulted in a biased juror serving on the jury, and "nothing in the record of voir dire suggest[ed] that she was willing to set aside her personal biases and decide the case based on the law and the evidence presented at trial").

¶ 24    We turn next to D.E.'s contention that had Juror N not withheld the information about her daughter, he would have excused Juror N with a peremptory challenge (assuming he could

12

not strike her for cause). To be sure, the record shows that D.E. exercised all of his peremptory challenges, using two to excuse potential jurors who had disclosed some experiences related to sexual assault. But even if we assume Juror N intentionally withheld the information and that D.E. would have used a peremptory challenge to excuse her (as he asserts he would have), we still can't presume prejudice. Before *Novotny*, we may have viewed the issue differently. But in that case, the Colorado Supreme Court departed from earlier decisions requiring automatic reversal where a defendant was "forced" to use a peremptory challenge to remedy a trial court's mistaken denial of a challenge for cause. *Novotny*, ¶¶ 2, 14, 27. In doing so, it concluded that "allowing a defendant fewer peremptory challenges than authorized" doesn't, in and of itself, require reversal. *Id.* at ¶ 27.

¶ 25 And in *Vigil v. People*, 2019 CO 105, the supreme court settled any doubt about whether a defendant could claim prejudice from the denial of the right to exercise a peremptory challenge. More specifically, the *Vigil* court held that "because neither the prosecution nor the defendant is granted any right in this jurisdiction, by constitution, statute, or rule, to shape the

composition of the jury through the use of peremptory challenges, the defendant could not have been harmed by the deprivation of any such right." *Id.* at ¶ 25.

¶ 26 Thus, to the extent pre-*Vigil* cases (like *Christopher, Dunoyair, Borrelli,* or *People v. Rael,* 40 Colo. App. 374, 578 P.2d 1067 (1978)) can be read to require reversal for the denial of the right to exercise a peremptory challenge alone, we conclude *Novotny* and *Vigil* implicitly overruled them. For that reason, even if D.E. would have exercised a peremptory challenge to strike Juror N, that, by itself, doesn't establish reversible prejudice. *See Vigil,* ¶ 25; *Novotny,* ¶ 27.

### 5. Practical Remedies

¶ 27 Fifth, as to the final *Christopher* factor, we agree with D.E. that it wasn't "outside the scope" of the juvenile court's authority to replace Juror N with the alternate after her disclosure. *See* § 16-10-106, C.R.S. 2019. Given that the disclosure happened before trial, replacing Juror N was a simple solution. But whether to do that was in the court's discretion. *People v. Abbott,* 690 P.2d 1263, 1268-69 (Colo. 1984). And because it found Juror N didn't intentionally withhold the information and could be fair and

14

unbiased, the court acted within its discretion in declining to replace her with the alternate juror.

### 6.  Other Contentions

¶ 28  Even putting aside the *Christopher* factors, we are not persuaded by D.E.'s contention that the court reversibly erred because the incident concerning Juror N's daughter occurred when her daughter was fourteen (like the victim here) and involved a seventeen-year-old (D.E.'s age).  After defense counsel raised this similarity, Juror N responded that the incident with her daughter "happened a long time ago and [was] very much forgotten."  And the juvenile court — able to listen to and observe Juror N — found her "very credible."

¶ 29  Nor does the fact that the incident regarding Juror N's daughter also involved sexual assault necessarily preclude her from sitting as a juror.  *See People v. Conyac*, 2014 COA 8M, ¶¶ 17-19 (determining there was no abuse of discretion in sexual assault case where court denied challenge for cause against juror whose niece had been a victim of sexual assault where juror stated she would follow the court's instructions and decide the case on the evidence); *People v. Dashner*, 77 P.3d 787, 789-90 (Colo. App. 2003)

(deciding there was no abuse of discretion where court denied challenge for cause against juror whose son had been a victim of the same crime charged at trial where juror stated he would follow the court's instructions and decide the case on the evidence).

¶ 30    We are equally unpersuaded that what happened here is like the cases D.E. directs us to where new proceedings were required based on a juror's post-trial disclosure. *See, e.g., English v. Berghuis*, 900 F.3d 804 (6th Cir. 2018); *Allen v. Ramada Inn, Inc.*, 778 P.2d 291 (Colo. App. 1989); *Borrelli*, 624 P.2d 900; *Rael*, 40 Colo. App. 374, 578 P.2d 1067.  Unlike each of these cases, Juror N did not respond untruthfully or incompletely to a direct question during voir dire.  Much to the contrary, she simply wasn't asked anything by counsel that would have elicited a disclosure of her son's or daughter's experiences.  *Cf. English*, 900 F.3d at 815-18 (juror didn't disclose during trial that she had been sexually abused as a child and later made three "partly contradictory" assertions regarding her nondisclosure); *Allen*, 778 P.2d at 292 (two jurors who were victims of rape did not respond when asked during voir dire whether they "had been the victim of a rape"); *Borrelli*, 624 P.2d at 902 (when asked directly about relationship with witness, the

16

juror failed to disclose the full scope of that relationship); *Rael*, 40 Colo. App. at 375-76, 578 P.2d at 1068 (despite court's inquiry whether anyone had been a defendant in a criminal case, the juror failed to disclose that he had pleaded guilty to a crime).

¶ 31 And even more unlike the cases D.E. relies on, Juror N came forward before the presentation of evidence and volunteered the disclosure, enabling the court and counsel to directly question her. *Cf. English*, 900 F.3d at 807 (after the defendant was convicted of sexual conduct, a juror revealed "at an evidentiary hearing" that she had been sexually abused); *Allen*, 778 P.2d at 292 (after verdict, counsel "learned" two jurors had not truthfully answered the question about being raped); *Borrelli*, 624 P.2d at 902 (a year after trial and after juror died, it was "discovered" the juror had not been truthful in voir dire); *Rael*, 40 Colo. App. at 375, 578 P.2d at 1068 (after trial, defense counsel "was informed" a juror hadn't disclosed criminal conduct).

¶ 32 Finally, although D.E. now argues that Juror N's response to Question 6 on the juror questionnaire was untruthful, the record is undeveloped on this issue since no one asked her about that question after she made her voluntary disclosure. In any event,

given the court's credibility findings, and that Question 3 is more directly on point, we can't conclude that additional inquiry on Question 6 would have made a difference.

## 7. Conclusion

¶ 33 Given all this, and because the record supports the juvenile court's findings that Juror N didn't intentionally withhold the information and could be fair and unbiased, we conclude that the court's decision to allow Juror N to serve on the jury was within its discretion.

## III. Evidentiary Challenges

¶ 34 D.E. next contends that the juvenile court abused its discretion by (1) allowing the prosecution to introduce evidence of the victim's virginity and (2) barring his evidence that the victim was actively seeking to lose her virginity. We perceive no reversible error.

## A. Additional Facts

¶ 35 Before trial, D.E. filed two motions in limine to exclude evidence of the victim's virginity. He also moved to introduce evidence that, one month before their sexual encounter, the victim allegedly communicated to two separate boys that she wanted to

have sex. He argued this evidence was admissible because it fell outside the rape shield statute and was relevant to his consent defense.

¶ 36     With respect to the victim's virginity, the juvenile court agreed with the prosecution that this evidence was relevant to the issue of consent but found that it could be significantly prejudicial if "taken to an extreme." Therefore, despite the prosecution's request to introduce the virginity evidence through multiple witnesses, the court limited the prosecution to statements the victim made to a sexual assault nurse examiner. And the court also agreed that a question posed by a detective during D.E.'s recorded interview that referenced the victim's virginity could be played at trial, but would be preceded by a limiting instruction to mitigate its prejudicial effect.

¶ 37     As to the victim's communications with other boys, the court prohibited this evidence, finding that (1) D.E.'s offer of proof was insufficient to overcome the presumption of irrelevance under the rape shield statute; (2) the relevance of this evidence was "questionable"; and (3) the "prejudicial value" of the evidence under CRE 403 was "significant."

## B. Standard of Review and Governing Law

¶ 38 We review a juvenile court's evidentiary rulings, including those based on the rape shield statute, for an abuse of discretion. *People v. Melillo*, 25 P.3d 769, 772 (Colo. 2001). A court abuses its discretion if its ruling is manifestly arbitrary, unreasonable, or unfair, or based on an erroneous view of the law. *People v. Sims*, 2019 COA 66, ¶ 44.

¶ 39 The rape shield statute creates a presumption that evidence relating to a victim's prior "sexual conduct" is irrelevant. *People v. Williamson*, 249 P.3d 801, 802 (Colo. 2011); *see* § 18-3-407(1), C.R.S. 2019. The statute does not, however, "specifically prohibit the victim from testifying as to the *lack* of prior sexual activity." *People v. Johnson*, 671 P.2d 1017, 1020 (Colo. App. 1983).

¶ 40 The presumption of irrelevance can be rebutted if the defendant makes an offer of proof showing the evidence is relevant to a material issue in the case. § 18-3-407(2); *Melillo*, 25 P.3d at 774. But even then, the admissibility of such evidence remains subject to the usual evidentiary rules. *Fletcher v. People*, 179 P.3d 969, 973 (Colo. 2007).

¶ 41    Where a defendant preserves his evidentiary challenges, and evidence was erroneously admitted, we will reverse unless the error was harmless. *People v. Stewart*, 55 P.3d 107, 124 (Colo. 2002). An error is harmless when "there is not a reasonable probability that it contributed to the defendant's conviction." *Mata-Medina v. People*, 71 P.3d 973, 980 (Colo. 2003); *see* Crim. P. 52(a).

### C.    Evidence of Victim's Virginity

¶ 42    D.E. argues that it was reversible error for the court to allow evidence of the victim's virginity because such evidence was irrelevant, inadmissible to disprove consent under the rape shield statute, and impermissible character evidence under CRE 404. Under the circumstances here, however, we need not determine if virginity evidence is ever admissible to disprove consent. This is so because, even assuming the juvenile court erred by admitting this evidence, any error was harmless.

¶ 43    The victim didn't testify about her virginity, nor did any of her friends or family members. Instead, evidence of the victim's virginity was referenced at trial in two ways. First, the prosecutor asked the nurse who performed the sexual assault examination a series of questions about her exam notes. The nurse confirmed the

notes stated "never" in response to a question on the form asking when the victim's last sexual activity was. The prosecutor then moved to the next question and asked nothing else about the reported response or the subject.

¶ 44    Second, the jury heard an audio recording of a detective interviewing D.E. During the first part of the interview, D.E. denied he was with the victim or that he had sex with her. Later, he admitted they did have sex, but told the detective it was consensual. After D.E. changed directions, the detective asked: "You're telling me that, a girl, a 14 year old girl who's never had sex before, chooses to lose her virginity like this?" But, before the jury heard that question, the juvenile court gave the following instruction:

> I've interrupted this [audio] at this point to instruct you that the question you are about to hear from [the detective] is being presented for the purpose of placing D.E.'s response to the question in context only. You may not consider [the detective's] question for any other purpose.

And during closing argument, before the prosecutor replayed this portion of the interview, the court again gave this limiting instruction. D.E. doesn't challenge the adequacy of the limiting

22

instruction and, in fact, proposed the language that the court ultimately used. Nor does D.E. challenge the admissibility of the interview or contend that the interview would have made sense to the jury in the absence of the detective's question.

¶ 45 So, over the course of a six-day trial with twenty-three witnesses, the jurors (1) once heard a reference to the victim's lack of sexual history as reported in the nurse's exam notes; and (2) twice heard the detective's question referencing the victim's virginity, preceded each time by the instruction that they were to view it only as a question. Other than that, nothing else was said on the topic. And the prosecutor never expressly referenced it in either opening statement or closing argument.

¶ 46 Nor do we see anything in the record that suggests the prosecutor affirmatively used the evidence to either rebut D.E.'s consent defense or argue that D.E. "deflowered" the victim to "evoke [the] jurors' sympathy and moral judgment." *Fletcher*, 179 P.3d at 975.

¶ 47 Indeed, the jury acquitted D.E. of the counts involving a deadly weapon, so it ultimately didn't credit the victim's account entirely. This shows the jurors were able to parse through the

evidence and weren't improperly swayed by the few references to the victim's sexual inexperience. *See Martin v. People*, 738 P.2d 789, 795-96 (Colo. 1987) (although not conclusive, a split verdict indicates that prejudice did not affect the jury's verdict).

¶ 48    Given these circumstances, the single reference to the exam notes, and the appropriate limiting instruction preceding the detective's question, we conclude any error in the admission of the virginity evidence was harmless. *See Fletcher*, 179 P.3d at 976 (finding two references to the victim's lack of sexual experience during testimony and one indirect reference during closing were harmless); *see also People v. Jimenez*, 217 P.3d 841, 865 (Colo. App. 2008) ("Under the circumstances, these brief, isolated statements, even if erroneously admitted, did not affect defendant's substantial rights.").

D.    Evidence That Victim Was Seeking To Lose Her Virginity

¶ 49    D.E. also argues that, given the evidence of the victim's virginity, the court erred by disallowing evidence that the victim was allegedly actively seeking to lose her virginity. D.E. specifically contends the evidence wasn't prohibited by the rape shield statute and was relevant to his consent defense. We are unpersuaded.

¶ 50    We initially reject D.E.'s argument that, because the rape

shield statute only applies to "sexual conduct" and not statements,

this evidence necessarily falls outside the statute.

¶ 51    The basic purpose of the rape shield statute is to provide

sexual assault victims protection from humiliating public "fishing

expeditions" into their sexual histories, unless the proponent of the

evidence makes a preliminary showing that such evidence will be

relevant to some issue in the pending case. *People v. MacLeod*, 176

P.3d 75, 79 (Colo. 2008). The statute doesn't preclude the

admission of all sexual history evidence at trial; rather, it strikes a

balance between the defendant's rights and the victim's privacy

interest. *Id.*; *see also People v. Harris*, 43 P.3d 221, 226 (Colo.

2002).

¶ 52    To that end, the term "sexual conduct" as used in the statute

encompasses "a broad range of behaviors related, but not limited, to

sexual contact and intercourse." *Williamson*, 249 P.3d at 803-04

(concluding that solicitation of prostitution constitutes "sexual

conduct" under the statute).

¶ 53    We see no abuse of the juvenile court's discretion in finding

that D.E.'s offer of proof didn't overcome the presumption that the

25

evidence of the victim allegedly trying to lose her virginity was prohibited by the rape shield statute. § 18-3-407(2); *Melillo*, 25 P.3d at 774.

¶ 54     But even if we concluded the offer of proof was sufficient, we also agree with the juvenile court's concern about the evidence's relevance. Absent the impermissible inference drawn from those communications, whether she was interested in having sex with other boys sheds "no relevant light on the issue whether she did or did not consent to sexual contact with [D.E.]" *People v. Braley*, 879 P.2d 410, 416 (Colo. App. 1993); *see People in Interest of K.N.*, 977 P.2d 868, 876 (Colo. 1999) (victim's sexual history didn't make it more probable that she consented to the sexual encounter with the defendant).

¶ 55     And we again agree with the juvenile court that the prejudicial effect of the evidence substantially outweighs any minimal relevance. *See* CRE 403; *see Melillo*, 25 P.3d at 777 (rape shield statute protects victims from "the unnecessary invasion of privacy and emotional abuse").

¶ 56     Finally, we reject D.E.'s assertion that this presents a constitutional confrontation issue. "Not every evidentiary ruling

that affects a defendant's ability to challenge the credibility of the evidence against him amounts to a constitutional error." *Conyac*, ¶ 108. It is only if the juvenile court's ruling effectively bars the defendant from meaningfully testing evidence central to establishing his guilt that the error is of constitutional magnitude. *Krutsinger v. People*, 219 P.3d 1054, 1062 (Colo. 2009). Excluding the victim's communications with the other boys didn't deprive D.E. of his only means to test significant prosecution evidence or impeach the victim's credibility. Indeed, D.E. did so through extensive cross-examination and by presenting his own character and expert witnesses. Nor did it prevent D.E. from arguing his consent defense, which he advanced in opening statement and closing argument.

¶ 57 We therefore conclude that the juvenile court did not err by excluding evidence that the victim was allegedly seeking to lose her virginity.

## IV. Bolstering Testimony

¶ 58 D.E.'s final contention is that the juvenile court erred by allowing two expert witnesses to improperly bolster the victim's credibility. We again perceive no reversible error.

27

## A. Additional Facts

¶ 59    The prosecution called Dr. Sheri Vanino to testify as a blind expert in the field of sexual offense dynamics. Dr. Vanino testified generally on direct examination about certain "rape myths" and "misinformation about the topic of sexual assault." When the prosecutor asked her about victims fabricating rape allegations for revenge or attention, she responded:

> Sure. So again, another huge myth. So the general public, even in the media you see it all the time where there's insinuations that women cry rape all the time or teenagers cry rape or children say they're — you know, lie and say they're being sexually abused when they're not. Well we know from the research that that's not accurate at all. It's very rare for people to —.

Before she finished her statement, defense counsel objected and asked to approach the bench. After an inaudible bench conference, the examination resumed and the prosecutor moved to a different topic. The transcript doesn't indicate whether the defense's objection was overruled or sustained.

¶ 60    As already noted, the nurse who examined the victim also testified as an expert at trial. While reviewing the nurse's exam notes, the prosecutor asked her what she meant when she wrote

that the victim had "appropriate affect." The nurse began to answer

and the following exchange occurred:

> [Nurse]: She was acting appropriately —

> [Defense Counsel]: Objection. Objection.

> [Nurse]: — the way that I have seen other young girls act in —

> [Prosecutor]: (Indiscernible.)

> [Nurse]: — a similar situation.

> [The Court]: All right. Just a minute. What's your objection[?]

> [Defense Counsel]: I'm sorry, Judge. I'm going to object to her testifying about how other people react, especially based on these small sample sizes. We can approach if the Court needs it for the record.

> [The Court]: I'll allow her to testify as to her observations of this patient.

> [Prosecutor]: Okay. Thank you.

The prosecutor then reiterated the court's guidance to the nurse

and again asked her what she meant by "appropriate affect?"

Without any objection, the nurse answered: "Based on the

circumstances and what had just happened to her, it was

appropriate for the situation."

### B. Standard of Review and Governing Law

¶ 61     We review a ruling on the admissibility of expert testimony for an abuse of discretion. *Kutzly v. People*, 2019 CO 55, ¶ 8. A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misconstrues the law. *People v. Salas*, 2017 COA 63, ¶ 30. And, if it does, we reverse only if the improper expert testimony substantially influenced the verdict or affected the fairness of the proceedings. *Stewart*, 55 P.3d at 124.

¶ 62     A witness may not testify that another witness told the truth on a specific occasion. *Venalonzo v. People*, 2017 CO 9, ¶ 32; *People v. Bridges*, 2014 COA 65, ¶ 11. This rule applies with equal force to direct and indirect implications of a child's truthfulness. *Venalonzo*, ¶ 32.

¶ 63     Thus, a witness may not testify that a child reporting sexual assault was "sincere," *People v. Eppens*, 979 P.2d 14, 17 (Colo. 1999), "very believable," *People v. Gaffney*, 769 P.2d 1081, 1088 (Colo. 1989), "very credible," *People v. Cook*, 197 P.3d 269, 275-76 (Colo. App. 2008), or not "coached or guided," *Bridges*, ¶¶ 13, 16. A witness likewise may not testify that she "personally believed" the victim, *People v. Oliver*, 745 P.2d 222, 225 (Colo. 1987), or that

children tend not to fabricate stories of sexual abuse, *People v. Snook*, 745 P.2d 647, 649 (Colo. 1987). *See also People v. Marx*, 2019 COA 138, ¶ 19 (finding testimony about percentage of teenagers who fabricate sexual assault allegations was improper bolstering). That is, testimony that the victim's allegations are truthful is improper.

## C. Discussion

¶ 64 We need not decide whether the court erred by admitting the above testimony because, even assuming it did, any error was harmless, for three reasons.

¶ 65 First, it isn't clear from the record whether defense counsel's objections to the testimony were overruled. To the contrary, the transcripts suggest that the objections were effectively sustained given that, after each objection, the prosecutor either changed the topic or rephrased her question in line with the court's instruction. *See People v. Hogan*, 114 P.3d 42, 55-56 (Colo. App. 2004) (deciding that there was no reversible error where court sustained objections to four different lines of questioning and instructed the jury to disregard one line of questioning). Indeed, as the People note, D.E. didn't raise any issue regarding the manner in which the court

handled either objection. *People v. McKnight*, 39 Colo. App. 280, 284, 567 P.2d 811, 814 (1977) (determining reversible error did not occur where defense counsel, after a sustained objection, requested neither a mistrial nor a cautionary instruction).

¶ 66 Second, leaving aside whether the objections were sustained, Dr. Vanino told the jury that her testimony didn't relate to "the issue of consent." The nurse also testified that she couldn't say whether the injuries she observed were more likely consistent with consensual or nonconsensual sex. So both experts disclaimed an opinion on the only material issue — whether the sex was or wasn't consensual.

¶ 67 Third, the jury heard from the victim and had a chance to directly assess her credibility. *See Tevlin v. People*, 715 P.2d 338, 342 (Colo. 1986). In doing so, it did not entirely credit her version of events. And the jury likewise heard D.E.'s interview in which he eventually claimed the sex was consensual. So the jury was able to weigh D.E.'s account against the victim's.

¶ 68 Under these circumstances, even if we assume the court didn't sustain defendant's objections and that the experts' testimony constituted improper vouching, we can't conclude the brief

32

references substantially influenced the verdict or affected the fairness of the proceedings.

## V.    Conclusion

¶ 69    We affirm the adjudication.

JUDGE RICHMAN and JUDGE YUN concur.