RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0087p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

ABULAY NIAN,

　　　　　　　　　　*Petitioner-Appellant,*

*v.*

WARDEN, North Central Correctional Institution,

　　　　　　　　　　*Respondent-Appellee.*

No. 18-3938

─────────────────

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:17-cv-00313—James L. Graham, District Judge.

Argued:  May 1, 2020

Decided and Filed:  April 19, 2021

Before:  SILER, WHITE, and DONALD, Circuit Judges

─────────────────

## COUNSEL

**ARGUED:**  Brian A. Morris, TAFT STETTINIUS & HOLLISTER LLP, Cincinnati, Ohio, for Appellant.  William H. Lamb, OFFICE OF THE OHIO ATTORNEY GENERAL, Cincinnati, Ohio, for Appellee.  **ON BRIEF:**  Brian A. Morris, TAFT STETTINIUS & HOLLISTER LLP, Cincinnati, Ohio, for Appellant.  William H. Lamb, OFFICE OF THE OHIO ATTORNEY GENERAL, Cincinnati, Ohio, for Appellee.

　　　　DONALD, J., delivered the opinion of the court in which WHITE, J., joined.  SILER, J. (pp. 17–19), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

BERNICE BOUIE DONALD, Circuit Judge.  Petitioner Abulay Nian appeals the district court's denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The district court denied Nian a certificate of appealability (COA) on all his claims, but we later granted him a COA solely on his claim that the state court improperly excluded evidence of juror misconduct in violation of the Sixth Amendment to the Constitution.  This case arises from Nian's conviction of rape by cunnilingus.  Following Nian's conviction, a juror came forward to allege that another juror introduced extraneous information in the form of Nian's criminal record and national origin into deliberations.  After holding an evidentiary hearing, the state trial court excluded the juror's testimony pursuant to Ohio Rule of Evidence 606(B)—Ohio's so-called "*aliunde* rule."  That decision was affirmed on appeal.  However, because we previously held that it is constitutional error for a state court to use Ohio's *aliunde* rule to exclude evidence of a jury's consideration of extraneous information, we reverse the judgment of the district court, conditionally grant Nian's § 2254 petition, and remand the case to the district court with instructions to remand to the state trial court to conduct a proper hearing to determine whether a new trial is warranted.

I.

Nian worked as a home healthcare mentor for a family with a special-needs child, "SG." On November 15, 2014, nearing the end of his day working with SG, Nian went to his car to retrieve his timesheet for SG's mother to sign and then went back upstairs to say goodbye to SG, after the mother signed the sheet.  Nian stated to a police detective that because he thought SG was still in his sister's ("JCG") room, he proceeded to JCG's room, noticed SG had left, gave JCG a hug, then headed to SG's room.  Nian claims that he then said goodbye to SG and gave him a hug before leaving for the day.

However, JCG's version of events from that day were quite different.  JCG testified that Nian entered her room, tried to kiss her, put his hands on her private areas, and then pulled down

her leggings and tried to perform oral sex on her.  After Nian tried to assault JCG, she pushed him away, and he left.   JCG's mother testified that once Nian left, JCG came to her crying hysterically and explained what happened.  Her mother then called the police, reported what occurred,[1] and took JCG to the hospital.  Subsequently, the police called and met with Nian at the police station.   Nian then gave the police his statement and consented to a DNA swab.  (*Id.* PageID 610-16.)

Nian was later charged with one count of rape by digital penetration and one count of rape by cunnilingus.[2]  At trial, the prosecution's key evidence included the testimony of JCG, her mother, her brother, and the officers who had spoken to JCG and Nian; forensic evidence; and the texts between JCG and Nian.  After a two-day trial, Nian was found guilty of rape by cunnilingus on April 8, 2015.  Following his guilty verdict, Nian filed a motion for a new trial on May 13, 2015.  Nian alleged that a juror had improperly introduced extraneous information— including his criminal record and national origin—into deliberations, and he requested an evidentiary hearing.  Attached to his motion was an affidavit from Jacquelyn Cox, a juror on his case, who stated that another juror had introduced into deliberations facts about Nian being from Sierra Leone and having a prior criminal record, which she felt influenced the verdict.  After holding an evidentiary hearing on the matter, the state trial court excluded Cox's testimony under Ohio Rule of Evidence 606(B) and denied Nian's request for a new trial.  The state trial court also stated, after hearing the juror's testimony, that it "hates to or is very reluctant to say anything about a juror in this trial, but the Court certainly questions the credibility of the proffered testimony also and, but that's not here nor there because it is proffered, not part of the evidence presented."  (R. 6-5, PageID 947.)  Nian was then sentenced to five years in prison followed by five years of supervised release.

Nian appealed his conviction and sentence to the Ohio Court of Appeals, which affirmed the trial court.  Subsequently, Nian sought review in the Ohio Supreme Court, which declined to

---

[1]JCG told her story to the police and gave them her clothing.  (R. 6-2 PageID 578.)  The police used those clothes for forensic testing.  (*See, e.g.*, R. 6-3 PageID 749.)

[2]The state trial court granted Nian's motion for acquittal on the first count, rape by digital penetration, after the conclusion of the prosecution's case-in-chief.  (R. 6-3 PageID 803.)

accept jurisdiction of his appeal. On April 13, 2017, Nian filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Southern District of Ohio. His petition raised six claims, including a claim that the state court violated his Sixth Amendment rights by not granting him a new trial after he presented evidence that jurors had considered extraneous information during deliberations. On September 7, 2018, the district court rejected Nian's claims, dismissed his § 2254 petition, and denied him a COA. With regard to the Sixth Amendment claim, the district court held that Nian's claim lacked merit because he "failed to establish that the state appellate court unreasonably applied clearly established federal law."[3] (R. 8 PageID 1018.) Nian filed a timely appeal to this Court.

On appeal, we granted Nian a COA on one of the issues he raised below. Consequently, the only issue before the Court is whether the district court erred by denying Nian's claim that the state court improperly excluded evidence of juror misconduct in violation of the Sixth Amendment to the Constitution. However, before reaching the merits of that claim, we must first address a couple threshold issues.

## II.

First, we must determine whether we have the authority to hear this appeal. "It is a basic principle of Article III that a justiciable case or controversy must remain . . . at all stages of review, not merely at the time the complaint is filed." *United States v. Juvenile Male*, 564 U.S. 932, 936 (2011) (internal quotation marks and citation omitted). In criminal and habeas cases, "this requirement means that a defendant wishing to continue his appeals after the expiration of his sentence must suffer some 'continuing injury' or 'collateral consequence' sufficient to satisfy Article III." *Id.* "When the defendant challenges his underlying conviction, [the Supreme] Court's cases have long presumed the existence of collateral consequences." *Id.*

Although Nian has been released from prison, his case is not moot. "Individuals subject to post-release control, like individuals subject to supervised release in the federal system, satisfy

---

[3]The district court also stated that Nian "appears to have waived any federal claim for this Court's review" after analyzing whether he procedurally defaulted his Sixth Amendment claim. (R. 8 PageID 1016.)

the 'in custody' requirement." *In re Stansell*, 828 F.3d 412, 416 (6th Cir. 2016).  Because Nian remains on supervised release, he is thus "in custody," and no question of mootness exists.

III.

Next, we must determine whether, as Respondent alleges, Nian procedurally defaulted the issue before this Court by not presenting it to the state courts.  "Because state courts, like federal courts, are required to enforce federal law, including rights asserted under the Constitution, comity requires that the state courts should have the first opportunity to review the prisoner's federal claim and provide any necessary relief."  *Whiting v. Burt*, 395 F.3d 602, 612 (6th Cir. 2005).  "While procedural default is not a jurisdictional bar to review of such a claim," *Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000) (citing *Trest v. Cain*, 522 U.S. 87, 118 (1997)), federal courts ordinarily may not "consider a claim in a *habeas* petition that was not 'fairly presented' to the state courts" absent cause and prejudice to excuse the procedural default, *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000) (citation omitted).  "Fair presentation requires that the state courts be given the opportunity to see both the factual and legal basis for each claim." *Wagner v. Smith*, 581 F.3d 410, 414-15 (6th Cir. 2009).  But "[t]his does not mean that the applicant must recite 'chapter and verse' of constitutional law."  *Id.* at 415 (quoting *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006)).  Instead, to determine when claims have been "fairly presented," we ask whether the petitioner: (1) "relied upon federal cases employing constitutional analysis"; (2) "relied upon state cases employing federal constitutional analysis"; (3) "phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right"; or (4) "alleged facts well within the mainstream of constitutional law." *Hand v. Houk*, 871 F.3d 390, 418 (6th Cir. 2017).  However, it does not suffice to only present the claim to a state trial court; rather, the petitioner must raise the claim in state court and "pursue [it] through the state's ordinary appellate review procedures." *Thompson v. Bell*, 580 F.3d 423, 437 (6th Cir. 2009) (internal quotation marks and citation omitted).

Respondent asserts that Nian did not raise his claim before the trial court, appeals court, or the Ohio Supreme Court.  We disagree.  Nian's motion for a new trial cited the Fourteenth Amendment, alleged that the Constitution requires that a criminal defendant be tried before a panel of fair and impartial jurors, cited federal cases employing that constitutional analysis, and

offered the facts necessary to that determination.  Next, Nian alleged that he was denied his right to a fair and impartial panel of jurors as guaranteed by the Sixth Amendment to the United States Constitution and again laid out the facts necessary to that determination.  It is clear that Nian fairly presented his Sixth Amendment claim to the state trial court and intermediate appellate court.

It is less clear whether Nian fairly presented his claim to the Ohio Supreme Court, as is required.  Nian's *pro se*[4] brief to the Ohio Supreme Court presents a close call on whether he fairly presented his Sixth Amendment claim.  That is because Nian did not rely upon state or federal cases employing federal constitutional analysis or explicitly allege, as he had before, that he was denied his right to a fair and impartial panel of jurors.  Instead, Nian claimed he was denied his rights to a fair trial.  This Court has generally found procedural default when a petitioner made bare assertions of denial of "rights to a fair trial" or "due process."  *See, e.g.*, *Blackmon v. Booker*, 394 F.3d 399, 401 (6th Cir. 2004) ("To escape procedural default, claims that the rights to due process and to a fair trial have been violated must of themselves be fairly presented, rather than functioning as catchall language appearing within the presentation of other non-constitutional arguments.").

Nonetheless, Nian's circumstances present a different sort of case because he did not use "rights to a fair trial" as "catchall language."  Instead, as Nian argues in his brief: "Mr. Nian was Denied his Rights to a Fair Trial when Prejudicial Extraneous Evidence was presented to the Jury during Deliberations without the Court's approval[.]"  (R. 6-1 PageID 208.)  We previously noted in *Franklin v. Rose*:

> The greatest difficulty arises when in the state court the petitioner has described his claim in very broad terms, such as denial of a "fair trial."  * * *  Obviously, not every event in a criminal proceeding that might be described as "unfair" would be a violation of the defendant's rights under the Constitution.  * * *  In order to determine, therefore, whether a claim that the defendant has been denied a "fair trial" involves a constitutional claim, one must look to the factual allegations supporting the claim.

---

[4]Nian had previously been represented by counsel before the trial court and the intermediate appellate court.  (*See* R. 6-1 PageID 107-08, 129, 157.)

811 F.2d 322, 326 (6th Cir. 1987) (quoting *Daye v. Attorney General*, 696 F.2d 186, 193-94 (2d Cir. 1982)).  Indeed, that is the situation that confronts us in this case.  The *Franklin* court recommended considering whether the "assertion of the claim" was made "in terms so particular as to call to mind a specific right protected by the Constitution" and whether the "allegation of [the] pattern of facts" was "well within the mainstream of constitutional litigation." *Id.* (citation omitted).  That is the case here.  While Nian used the broad language "rights to a fair trial," (R. 6-1 PageID 208), he did not rely on bare allegations.  He made it clear that the jury violated his right to a fair trial by considering prejudicial extraneous evidence.  In a previous case, we held that a claim was fairly presented when the petitioner used phrasing that was similar to language used in prior Sixth Circuit case law.  *West v. Bell*, 550 F.3d 542, 564 (6th Cir. 2008) ("West's allegations regarding the first set of statements were sufficiently particular and well within the mainstream of constitutional law. . . . Though this statement was not close to an invocation of the Supreme Court's standard for judging prosecutorial misconduct, it was evocative of language that we articulated in *United States v. Leon*, 534 F.2d 667 (6th Cir. 1976).").

Here, Nian also used a statement evocative of language that we articulated in prior Sixth Circuit cases.  For example, in *Fletcher v. McKee*, we stated: "[U]nder clearly established federal law, jury exposure to extrinsic evidence or other extraneous influence violates a defendant's Sixth Amendment rights."  355 F. App'x 935, 937 (6th Cir. 2009).  *Fletcher*'s statement is wholly consistent with Circuit precedent.  *See, e.g.*, *Thompson v. Parker*, 867 F.3d 641, 648 (6th Cir. 2017) ("There is thus a bright line, and rightly so, between, on the one hand, jurors' taking into account 'their own wisdom, experience, and common sense,' when evaluating the evidence admitted at trial, and, on the other hand, jurors' employing extraneous evidence such as news reports *of the case being decided by the jurors*[.]"  (citations omitted)).  Further bolstering Nian's case is his introduction of a fact pattern well within the mainstream of constitutional litigation.  Nian noted that he had supplied a juror's affidavit stating that Nian's prior criminal record—which was extraneous information—was introduced into deliberations by another juror and influenced the affiant's guilty verdict.  Accordingly, in his brief to the Ohio Supreme Court, Nian "phrased [his] claim . . . in terms sufficiently particular to allege a denial of a specific constitutional right" and "alleged facts well within the mainstream of constitutional law," *Hand*,

871 F.3d at 418; *cf. Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) ("Fulcher did not waive his Confrontation Clause arguments because at every stage of the process, he took some combination of the four actions discussed in [*Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2013).]"). We therefore hold that Nian did not procedurally default the issue raised in this appeal.

IV.

"On § 2254 review of a state court decision, the reviewing court faces a crucial threshold question: whether the state court actually adjudicated the defendant's claim on the merits." *English v. Berghuis*, 900 F.3d 804, 811 (6th Cir. 2018). If it did, AEDPA deference applies. *Id.* If it did not, "we apply the pre[-]A[ED]PA standard of review and review questions of law de novo and questions of fact for clear error." *Evans v. Hudson*, 575 F.3d 560, 564 (6th Cir. 2009).

To determine the standard of review in this matter, we must analyze whether the state court actually adjudicated Nian's Sixth Amendment claim on the merits. "A judgment is normally said to have been rendered 'on the merits' only if it was 'delivered after the court . . . heard and *evaluated* the evidence and the parties' substantive arguments.'" *Johnson v. Williams*, 568 U.S. 289, 302 (2013) (quoting Black's Law Dictionary 1199 (9th ed. 2009)). "[A]s used in this context, the word 'merits' is defined as '*[t]he intrinsic rights and wrongs of a case* as determined by *matters of substance*, in distinction from matters of form.'" *Id.* (quoting Webster's New International Dictionary 1540 (2d ed. 1954)). In practice, what this means is "[i]f a federal claim is rejected as a result of sheer inadvertence," then "it has not been evaluated based on the intrinsic right and wrong of the matter." *Id.* at 302-303. But we must apply a "strong but rebuttable presumption" that the state court has adjudicated the federal claim on the merits. *English*, 900 F.3d at 811 ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court *must presume* that the federal claim was adjudicated on the merits—but that presumption can in some limited circumstances be rebutted.") (internal quotation marks and citation omitted).

There are a few ways to rebut the presumption. First, a petitioner could show that the state standard is less protective than the federal standard. *Id.* Second, a petitioner could demonstrate that the state court only mentioned the federal constitutional provision or precedent

briefly or buried it in a string cite. *Id.* Third, the presumption may be overcome "when there is reason to think some other explanation for the state court's decision is more likely." *Brown v. Romanowski*, 845 F.3d 703, 711 (6th Cir. 2017) (quoting *Harrington v. Richter*, 562 U.S. 86, 99-100 (2011)).

Nian alleges that neither the appellate courts nor the state trial court decided his Sixth Amendment claim on the merits. Because the Ohio Supreme Court declined to exercise jurisdiction over the case, we must look to the Ohio Court of Appeals' opinion or the trial court's order. *See Romanowski*, 845 F.3d at 711 (explaining that we look through the unexplained orders to the last reasoned decision of the state courts). The Ohio Court of Appeals considered Nian's juror misconduct claim and held that the trial court did not abuse its discretion in determining that no juror misconduct occurred. But neither the Ohio Court of Appeals nor the trial court considered Nian's Sixth Amendment claim because Ohio Rule of Evidence 606(B) required the juror's testimony to be excluded since there was not sufficient evidence of improper outside influence.[5] In *Doan v. Brigano*, 237 F.3d 722, 736 (6th Cir. 2001), *abrogated on other grounds by Wiggins v. Smith*, 539 U.S. 510 (2003), we held the following with respect to Ohio Rule of Evidence 606(B):

> [T]he Ohio courts' application of Ohio Evid. R. 606(B) effectively denied Doan the opportunity to show a violation of his Sixth and Fourteenth Amendment rights to confront the evidence and the witnesses presented against him, as well as his right to a jury that considers only the evidence presented at trial. Furthermore, the Ohio courts applied Ohio Rule 606(B) while ignoring Doan's constitutional claim, thereby violating clearly established Supreme Court precedent recognizing the fundamental importance of Doan's constitutional right to a fair trial.[6]

We are faced with that exact situation in Nian's case. Neither the trial court nor the Ohio Court of Appeals reached the "intrinsic rights and wrongs . . . as determined by matters of substance"

---

[5]The state trial court held an evidentiary hearing based on the affidavit signed by Cox. While the trial court allowed Nian to elicit the juror's testimony, (*see generally* R. 6-5 PageID 927-53), it ultimately used Ohio Rule of Evidence 606(B) to exclude that testimony.

[6]Although the court in *Doan* applied AEDPA deference despite its recognition that the Ohio courts ignored the petitioner's constitutional claim, we subsequently recognized that *Doan*'s decision to apply AEDPA deference under these circumstances was abrogated by *Wiggins v. Smith*, 539 U.S. 510 (2003), which reviewed de novo a state court decision that did not address the prejudice prong of a *Strickland* claim. *Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) ("Both *Clifford* and *Doan,* however, were abrogated by *Wiggins v. Smith* . . . .").

of Nian's Sixth Amendment claim because Ohio Rule of Evidence 606(B) required that the juror's testimony be excluded. *Williams*, 568 U.S. at 302 (emphasis omitted). Therefore, we hold that the state court did not actually adjudicate Nian's claim on the merits and that AEDPA deference does not apply.

V.

Finally reaching the question of the merits of Nian's Sixth Amendment claim, he argues that his constitutional rights were violated when a juror introduced extraneous information, including his criminal record, into deliberations. Further, Nian asserts that the state court committed constitutional error when it excluded Cox's testimony about the juror misconduct under Ohio Rule of Evidence 606(B). The provision in Ohio Rule of Evidence 606(B) that Nian challenges, the so-called *aliunde* rule, states: "A juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear on any juror, only after some outside evidence of that act or event has been presented." Ohio Evid. R. 606(B). *But see* Fed. R. Evid. 606(b)(2)(A) (allowing a juror to testify whether "extraneous prejudicial information was improperly brought to the jury's attention" without requiring the presentation of outside evidence).

We previously considered the application of Ohio Rule of Evidence 606(B) in *Doan*, where a juror conducted an out-of-court experiment during the trial and discussed the results with the other jurors. 237 F.3d at 726-27. Upon discovering this, Doan filed a motion for a new trial, which was denied by the state trial court—with that denial later being affirmed by the appellate courts—because the juror's post-trial affidavit was ruled inadmissible under Ohio Rule of Evidence 606(B). *Id.* at 727-28. As mentioned above, we ultimately held that "the Ohio courts' application of Ohio Evid. R. 606(B) effectively denied Doan the opportunity to show a violation of his Sixth and Fourteenth Amendment rights," and "the Ohio courts applied Ohio Rule 606(B) while ignoring Doan's constitutional claim, thereby violating clearly established Supreme Court precedent recognizing the fundamental importance of Doan's constitutional right to a fair trial." *Id.* at 736. However, *Doan* was later abrogated on other grounds by *Wiggins*,

539 U.S. 510. We are thus confronted with the question of whether *Doan*'s analysis of Ohio's *aliunde* rule remains good law in this Circuit.

Respondent contends that *Doan* is not good law and cites to two subsequent decisions, *Brown v. Bradshaw* and *Hoffner v. Bradshaw*. In *Brown*, we denied the petitioner's request for discovery and an evidentiary hearing on the issue of juror coercion because "such evidence is inadmissible under Ohio law, Ohio R. Evid. 606(B), and [the petitioner] ha[d] not established any constitutional impediment to enforcing this state evidentiary rule." *Brown v. Bradshaw*, 531 F.3d 433, 438 (6th Cir. 2008). In *Hoffner*, we stated that "[t]his court has previously held that there is no 'constitutional impediment to enforcing' Ohio's *aliunde* rule." *Hoffner v. Bradshaw*, 622 F.3d 487, 501 (6th Cir. 2010) (quoting *Brown*, 531 F.3d at 438). But neither *Hoffner* nor *Brown* are on all fours with this case. In *Hoffner*, the petitioner tried to introduce an affidavit from a juror noting that the petitioner's lack of emotion during the trial and mitigation phases of the case was a factor in the jury's recommendation of the death penalty, which the state court excluded using the *aliunde* rule. *Id.* In *Brown*, the petitioner attempted to submit an affidavit from a juror stating that "the other jurors yelled and screamed at her in the jury room, pounded the table with their fists, isolated her, accused her of holding things up, blamed her for keeping the other jurors from returning to their families, and bullied her into changing her vote," but that state court too excluded the affidavit using Ohio's *aliunde* rule. 531 F.3d at 436. The problem with Respondent's reliance on these two cases is that they only involve internal factors that affected the jury, rather than extraneous influences. This distinction is significant because "[w]here no extraneous influence is present, courts will not intrude into matters internal to jury deliberations." *Fletcher*, 355 F. App'x at 937-38; *see also United States v. Lloyd*, 462 F.3d 510, 518-19 (6th Cir. 2006) ("[T]he only aspect of deliberations a juror may testify about is whether deliberations were influenced by extraneous influence or information.").

Furthermore, this Court has repeatedly cited to and quoted from *Doan*'s Sixth Amendment analysis even after recognizing the case was abrogated on other grounds. *See, e.g.*, *Smith v. Nagy*, 962 F.3d 192, 203 (6th Cir. 2020); *Moore v. Mitchell*, 708 F.3d 760, 806 (6th Cir. 2013); *United States v. Blackwell*, 459 F.3d 739, 769 (6th Cir. 2006). Thus, it is clear that

*Doan*'s Sixth Amendment analysis has survived *Wiggins* and is still regarded as good law in this Circuit.

*Doan* and its progeny also provide a clear answer to the issue before us. Nian offered testimony that a juror had "continually" referenced his prior criminal record, which was not discussed or entered into evidence at trial, during deliberations.[7] (R. 6-5 PageID 943.) The state court excluded that testimony using Ohio's *aliunde* rule. As we stated in *Doan*, "Ohio Rule 606(B), by refusing to allow consideration of evidence of the [juror misconduct] in this case, fails to protect adequately [the petitioner's] constitutional right to a fair trial." 237 F.3d at 733. Thus, "[t]he state court's use of this rule to decide [the petitioner's] constitutional claim is 'contrary to' clearly established Supreme Court precedent recognizing the fundamental importance of this right." *Id.* Therefore, we hold that the state court committed constitutional error.

## VI.

"We review constitutional errors . . . such as Sixth Amendment violations under a harmless error standard." *Mason v. Mitchell*, 320 F.3d 604, 638 (6th Cir. 2003). "[A] constitutional error is harmless if it did not have a 'substantial and injurious effect or influence in determining the jury's verdict.'" *Dufresne v. Palmer*, 876 F.3d 248, 260 (6th Cir. 2017) (per curiam) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). To satisfy the *Brecht* standard, there must be a "reasonable *probability*" that the error influenced the verdict. *Mitzel v. Tate*, 267 F.3d 524, 534 (6th Cir. 2001) (internal quotation marks and citation omitted). "When applying the *Brecht* standard, the Supreme Court held that, rather than placing the burden of proof on the petitioner, the sitting judge must ask directly, 'Do I, the judge, think that the error substantially influenced the jury's decision?'" *Jensen v. Romanowski*, 590 F.3d 373, 378 (6th Cir. 2009) (quoting *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995)). Practically speaking, this means that "[i]f the judge is certain that the error had no or a small effect, the verdict must stand," but if "the matter is so evenly balanced that [the judge] feels himself in a 'virtual equipoise' as to harmlessness, the judge must treat the error as if it were harmful and grant the

---

[7]Cox further noted in her affidavit presented with the motion for a new trial that Nian's prior criminal record came from newspaper accounts of the trial. (R. 6-1 PageID 109.)

petitioner's writ." *Id.*; *see also Ruelas v. Wolfenbarger*, 580 F.3d 403, 413 (6th Cir. 2009) ("[O]n habeas review judges independently review the facts supporting the judgment themselves; but the scale, if equal, tips in favor of the defendant").

Nian alleges that the "entire case came down to a credibility determination between [him] and the accuser." (Appellant's Br. 39.) Thus, according to Nian, the introduction of his criminal record into jury deliberations caused the jury to resolve that credibility determination in favor of his accuser. Respondent counters that the victim's testimony and fresh complaint, the forensic evidence, the texts between Nian and the victim, and Nian's statement to police are more than enough evidence of his guilt to make any constitutional error harmless. First, Nian's statements to police do not support Respondent's argument for harmless error. According to Detective Kevin Turner, "[Nian] stuck to his story that it was just a hug and a hug only," (R. 6-2 PageID 612), and Nian's written statement to police also states that he only received a hug, (*id.* PageID 616). With regard to the texts, they lend some credence to JCG's allegations, but due to what JCG testified was a typo, the texts are not entirely clear.[8] (*See id.* PageID 568-74.) While JCG's fresh complaint certainly could bolster the credibility of her testimony, it still leaves the jury with a he-said, she-said sort of credibility determination. Thus, the question before us turns on the strength of the forensic evidence.

The forensic evidence included both DNA and amylase evidence. First, Sarah Glass, a forensic scientist, provided testimony regarding tests she ran on JCG's leggings. After examining JCG's leggings for body fluids, Glass found amylase, which she testified is a component of saliva, on the interior crotch area. However, Glass also testified that amylase is found in other body fluids like sweat—albeit, in lower concentrations than it is in saliva. Further, Glass testified that she could not determine from which person the amylase originated. With regard to the DNA evidence, Raymond Peoples, a DNA expert and forensic scientist, also tested the crotch area of the leggings. One of the tests performed on the crotch area with the highest concentration of amylase found DNA from JCG and could not exclude Nian from being

---

[8]The text with the typo stated: "Because I was trying to pursue you and you weren't getting the message." (R. 6-2 PageID 570.) JCG says she meant to type "wasn't trying to pursue you." (*Id.*) When read in the full context of the text messages between the two, JCG's testimony is certainly believable.

a contributor on a secondary sample.**9**  Additionally, in a different test of a swab from the crotch area of the leggings, Peoples found DNA from JCG and Nian.**10**  (*Id.* PageID 755.)  However, Peoples also conceded that he could not determine if the DNA came from a body fluid or was simply "touch DNA."**11**  (*Id.* PageID 761, 785-87).

In his closing argument, Nian essentially asserted that the DNA only proved that he was present in the house and had contact with JCG, which he did not deny.  (*Id.* PageID 837.) Further, he argued that the amylase in the leggings came from JCG and that the case simply came down to which person you believed.  (*Id.* PageID 837-39.)  The forensic evidence in this case could support either Nian's or JCG's versions of events.  The amylase in the leggings could have been from Nian's saliva or JCG's sweat.  The DNA only proved that Nian had contact with JCG, but his story from the beginning was that he merely hugged her and had been in her house almost every day for two weeks.  Ultimately, there was sufficient evidence to prove Nian's guilt if a juror believed JCG's version of events or his innocence if a juror believed Nian's version of events.  The case came down to a credibility determination.  The state trial court's constitutional error is thus, in part, due to a juror's alleged introduction of Nian's criminal record into deliberations, and the Supreme Court has explained that "prior trouble with the law . . . is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge."  *Michelson v. United States*, 335 U.S. 469, 475-76 (1948).  Further, we have noted that a juror introducing extraneous information into deliberations "can rarely be viewed as harmless."  *In re Beverly Hills Fire Litig.*, 695 F.2d 207, 215 (6th Cir. 1982); *accord Jeffries v. Wood*, 114 F.3d 1484, 1490 (9th Cir. 1997) ("Juror knowledge of a defendant's past criminal record has long been recognized to be prejudicial."), *overruled on other grounds by Gonzalez v. Arizona*, 677 F.3d 383 (9th Cir. 2012); *United States v. Puco*, 453 F.2d 539, 542 (2d Cir. 1971) ("The propensity of

---

**9**Peoples clarified that this meant there was enough DNA that it could have excluded him if it did not match his profile but not enough DNA there for it to say he was a definitive match.  (R. 6-3 PageID 755.)

**10**Peoples ran a separate test on the waistband of the leggings and found DNA samples from JCG and an unknown male, but the test excluded Nian.  Nian posits that this DNA was "touch DNA" from JCG's brother. (Appellant's Br. 14.)

**11**Peoples also noted that "touch DNA" could be present simply from an individual being in the house and around a person.  (*Id.* PageID 763-67.)

Puco's narcotics conviction to influence the minds of the jurors improperly needs little elaboration. Reference to a defendant's criminal record is always highly prejudicial." (internal quotation marks and citation omitted)).

This is not the rare case where the introduction of extraneous information was harmless. *Cf. Doan*, 237 F.3d at 738 (holding that a juror's out-of-court experiment was harmless where the evidence against Doan included his "own taped confessions . . . describing in detail the violent acts that he committed against [the victim], the serious inconsistencies between Doan's testimony and the medical evidence, and the clear inconsistencies in Doan's testimony itself"). Rather, there is a reasonable probability that if a juror discussed Nian's criminal record during deliberations, that constitutional violation "affected or influenced the verdict." *Mitzel*, 267 F.3d at 534. Accordingly, we find that the state court's constitutional error was not harmless.[12] (Appellant's Br. 28-33.)

The parties disagree about the appropriate remedy. We note that it is ordinarily appropriate to condition release on a new trial where prejudicial extraneous information of this type is discussed during deliberations. *See, e.g.*, *Nagy*, 962 F.3d at 202 (explaining that a defendant is entitled to a new trial where extraneous information is presented to the jury that prejudiced the defendant); *cf. Doan*, 237 F.3d at 735-36 (explaining that a new trial would be appropriate if the constitutional error was not harmless). However, here, after listening to the juror's testimony, the state trial court implied—although it did not make a finding—that the juror's testimony may not be credible, and neither side presented any other witnesses. We thus leave it to the state trial court to determine whether the extraneous information was in fact introduced during deliberations through an evidentiary hearing, also referred to as a *Remmer*[13] hearing. *See Ewing v. Horton*, 914 F.3d 1027, 1028, 1032-34 (6th Cir. 2019) (conditionally granting habeas relief unless the state conducts a proper evidentiary hearing where the state court had erroneously determined that the extraneous information was harmless, reasoning that the

---

[12]Because we determine that Nian is entitled to habeas relief based on the state trial court's exclusion of Cox's testimony with respect to the introduction of Nian's criminal record into the jury's deliberations, we need not determine whether the information introduced regarding Nian's national origin would—in itself—also entitle Nian to that same relief.

[13]*Remmer v. United States*, 347 U.S. 227 (1954).

only constitutional injury that had been shown to date was the violation of due process from the lack of a hearing, and therefore "[t]he appropriate remedy in such a case . . . is generally to order release unless the State provides—instead of a new trial—a hearing to consider whether a new trial is warranted"). In making this determination, the state trial court should be mindful that significant time has passed since the verdict, which may impact the parties' ability to present information relevant to the state trial court's determination. *See id.* at 1033 ("We are mindful that the passing of time since Ewing's conviction eight years ago may make it difficult to conduct a suitable *Remmer* hearing at this stage. Jurors move and memories fade."); *cf. Dassault Systemes, SA v. Childress*, 828 F. App'x 229, 248 (6th Cir. 2020) ("Because the trial took place over three years ago, an evidentiary hearing at this stage requiring jurors to recount their memory of deliberations would serve less value than it would have at the time of Childress's motion. Moreover, Murphy's declaration, on its own, warrants a new trial because of the nature of the extraneous information he cited and his explicit attestation that the information affected the jury. An evidentiary hearing at this point would be an inappropriate remedy, and we instead remand for a new trial."). As we said in *Ewing*, the state "courts are well equipped to provide appropriate relief should the passage of time prevent the court from affording [Nian] a constitutionally-meaningful *Remmer* hearing, and [Nian] is free to seek habeas relief if he finds the State's process constitutionally inadequate." *Ewing*, 914 F.3d at 1033.

## VII.

Because the exclusion of the Juror Cox's testimony under Ohio Rule of Evidence 606(B) was constitutional error, we reverse the judgment of the district court, conditionally grant Nian's § 2254 petition, and remand the case to the district court with instructions to remand to the state trial court to conduct a proper hearing to determine whether a new trial is warranted. At the hearing, the state trial court shall not apply Ohio Rule of Evidence 606(B) in a manner inconsistent with this opinion.

———————————————

**DISSENT**

———————————————

SILER, Circuit Judge, dissenting.  I beg to dissent from the majority decision.  I would affirm the decision of the district court, because whatever constitutional error may have arisen from the state court's exclusion of the juror's statement about potential juror misconduct is harmless beyond a reasonable doubt.  Nian failed to make out a colorable claim of extraneous influence over the jury, even when considering that excluded testimony.

As the majority notes, Nian alleges that the jury's verdict was improperly tainted by two facts:  (1) that Nian had a criminal record and (2) that Nian was from Sierra Leone.  The evidence Nian produced to support his belief that the verdict was tainted by extraneous information is (1) the affidavit and testimony of juror Jacquelyn Cox that "In the course of the deliberations one of the other jurors introduced into the discussions facts about the defendant being from Sierra Leone and having a prior record," and (2) a newspaper article about Nian revealing his criminal record.  Part of the affidavit from Cox stated "following the trial on Tuesday April 14, I discovered these facts came from newspaper accounts of the trial."

The majority finds that the failure of the trial court to consider Cox's testimony under Ohio law was constitutional error.  The majority suggests that the relief must be to remand the case to the district court and further remand to the state court for a new trial.  It also directs the federal district court to instruct the state court to conduct a new hearing to determine whether a new trial is warranted, under *Remmer v. United States*, 347 U.S. 227, 229-30 (1954).  To be sure, *Remmer* is a federal case, but it is applicable to jury misconduct in a state trial.  *See Smith v. Nagy*, 962 F.3d 192, 199 (6th Cir. 2020).

In the present case, the equivalent to a *Remmer* hearing was conducted by the trial court at the request of defense counsel within a month after the verdict.  Juror Cox testified and presented her affidavit mentioned.  That was when the *Remmer* hearing should have been conducted.  Although the trial court sustained the objection of the prosecution on considering that evidence, it allowed defense counsel to proceed to proffer the evidence he was seeking to

bring to the attention of the court. That included the affidavit and the testimony of Cox, but no other evidence was proffered at that time.

Ineffective assistance of counsel is not an issue which we are called upon to consider, but defense counsel at that hearing should have requested permission to call other members of the jury to state what had happened in the jury deliberations. The only evidence from Cox was that one of the jurors discussed the fact that Nian had come from Sierra Leone and that Nian had a prior record. We now know from the record that the issue that Nian had come from a foreign country and was not a citizen was mentioned by defense counsel at the trial. There was no evidence at trial about a prior criminal record, but the newspaper article filed in the hearing was published more than five months before the trial and it did not mention that Nian was from Sierra Leone. Moreover, no juror was questioned as to whether he or she had read the article or picked it up from the internet. Even juror Cox put in her affidavit that she discovered that the facts came from newspaper accounts but she learned this "following the trial." She could not remember the fact that the trial judge in the case spoke to the jurors after the verdict and mentioned that Nian had a prior record. The equivalent of a *Remmer* hearing occurred at that time. The state trial court allowed defense counsel the hearing at a short time after the trial, and the record has not proven jury misconduct.

The hearing conducted by the trial court was at the request of defense counsel and allowed defense counsel to proffer the affidavit and testimony of the affiant. In the trial court, the judge asked defense counsel if he had any other evidence to be proffered, and counsel indicated in the negative. Although the court could have called in every juror in the case and questioned them, as related in *United States v. Taylor*, 814 F.3d 340, 347-49 (6th Cir. 2016), counsel should have asked the court to call in the remainder of the jury or to allow counsel to obtain statements from the jurors. We do not know from the record as to whether defense counsel attempted to question the remainder of the jurors.

In summary, defense counsel had the opportunity to call the other jurors or to introduce other evidence after juror Cox testified, and chose not to do so. I would find that on the record, there was no abuse of discretion by the trial judge. Even if the trial court should not have excluded the testimony under Ohio Rule of Evidence 606(B), based on the testimony and the

proffer, there was insufficient evidence to support the majority's conclusion to remand this case back to the state trial court to conduct the *Remmer* hearing which it had an opportunity to conduct after the trial when defense counsel did not wish to proffer any further evidence on the issue. I would deny the writ. Therefore, I dissent from the majority opinion.